**Case No. 16-1967**

———————————

**UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

———————————

MICHELLE TROTTER,
Plaintiff-Appellant,

v.

7R HOLDINGS, LLC, LUIS A. RUBI GONZALEZ, M/Y OLGA
Defendants-Respondents

———————————

Appeal from United States District Court of the Virgin Islands, St. Thomas
Civil Case No. 3:14-cv-0099 CVG RM
(Honorable Curtis V. Gomez)

———————————

**PLAINTIFF AND APPELLANT'S OPENING BRIEF**

———————————

Thomas F. Friedberg, Esq. (VI Bar No. 1006)
Sarah L. Bunge, Esq. (VI Bar No. 1014)
**LAW OFFICES OF FRIEDBERG & BUNGE**
610 West Ash Street, Suite 1400
P.O. Box 6814
San Diego, CA 92166-0814
Telephone: (619) 557-0101
Attorneys for Plaintiff and Appellant,
MICHELLE TROTTER

# TABLE OF CONTENTS

**Page**

I.    JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.   STATEMENT OF ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

III.  RELATED CASES AND PROCEEDINGS. . . . . . . . . . . . . . . . . . . . . .  2

IV.   STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

V.    SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

VI.   ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

      I.    The District Court Erred in Failing to Perform a Choice of Law
            Analysis to Determine Applicable Substantive Law. . . . . . . . . . . .  10

            A.    Place of the Wrongful Act. . . . . . . . . . . . . . . . . . . . . . . . . .  19

            B.    Place of Contact. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

            C.    Allegiance of the Defendant Shipowner. . . . . . . . . . . . . . . .  21

            D.    Allegiance or Domicile of the Injured. . . . . . . . . . . . . . . . .  22

            E.    Law of the Flag. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

            F.    Inaccessibility of a Foreign Forum. . . . . . . . . . . . . . . . . . . .  23

            G.    Law of the Forum. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

      II.   The BVI is Not a Suitable Alternative Forum, Therefore the
            Court Erred in Dismissing Plaintiff's Action. . . . . . . . . . . . . . . . .  25

III.    The Court Failed to Accord the Level of Deference Due to
        Plaintiff's Choice of Forum or to Articulate the Deference
        it Accorded. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

IV.     The District Court Failed to Consider and Reasonably
        Balance All of the Private and Public Interest Factors, and,
        Therefore, the Dismissal Must be Reversed. . . . . . . . . . . . . . . . . . .  33

        A.    The Court Failed to Even Consider Five of the
              Eleven Relevant *Gilbert* Factors. . . . . . . . . . . . . . . . . . . . . . .  34

        B.    With Respect to the Factors it Did Consider, the
              Court Failed to Acknowledge Relevant Facts and
              Clearly Erred in Analyzing and Weighing the
              Public and Private Interest Factors. . . . . . . . . . . . . . . . . . . . . .  39

V.      The District Court Erred in Failing to Hold Defendants to
        Their Burden to Provide Sufficient and Accurate Information
        To Properly Balance the Factors and in Failing to Access the
        Factors at the Time of Ruling on the Motion. . . . . . . . . . . . . . . . . .  52

VII.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  60

CERTIFICATE OF BAR MEMBERSHIP. . . . . . . . . . . . . . . . . . . . . . . .  61

CERTIFICATE OF WORD COUNT. . . . . . . . . . . . . . . . . . . . . . . . . . . .  61

CERTIFICATE REGARDING ELECTRONIC FILING.. . . . . . . . . . . . .  61

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  63

# TABLE OF AUTHORITIES

**Page**

## Federal Court Cases

*Aguilar v. Standard Oil Co. Of New Jersey*, 318 U.S. 724 (1943).. . . . . . . . . . . . .

*Ali v. Offshore Co.,* 753 F.2d 1327 (5th Cir. 1985). . . . . . . . . . . . . . . . . . . . . .  22

*Baily v. Dolphin Int'l, Inc.*, 697 F.2d 1268 (5th Cir. 1983). . . . . . . . . . . . . . . .  17

*Chiazor v. Transworld Drilling Co.*, 648 F.2d 1015 (5th Cir. 1981). . . . . . . . . .  19

*Collins v. Miller,* 525 U.S. 364 (1920). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

*Concerned Citizens of Vicksburg v. Sills,* 567 F.2d 646 (5th Cir 1978). . . . . . .  58

*Conners v. UUU Productions, Inc.* No. 03-CV-6420,
   2004 WL 834726 at 6 (E.D. Pa. Mar. 15, 2004). . . . . . . . . . . . . . . . . . . . . . .  35

*Cotemar S.A. De C.V. v. Hornbeck Offshore Sevrs, L.L.C.,* No. 13-20230
   (5th Cir. May 21, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  58

*Crowley Maritime Corp. V. Zipfel,* 486 U.S. 1054 (1988). . . . . . . . . . . . . . . . . . 11

*Daughenbaugh v. Bethlehem Steel Corp.,* 891 F. 2d 1199 (6th Cir. 1989). . .  15, 29

*Delta Airlines, Inc. V. Chimet, S.P.A.,* 619 F.3d 288 (3d Cir. 2010). . . . . . . . . .  52

*DeMateos v. Texaco, Inc.*, 562 F.2d 895 (3rd Cir. 1977). . . . . . . . . . . . . . . . . . . . 12

*Fogleman v. ARAMCO*, 920 F.2d 278 (5th Cir. 1991).. . . . . . . . . . . . . . . . . . . . 19

*Gulf Oil Corp. v. Gilbert,* 330 U.S. 501 (1947). . . . . . . . . . . . . . 33, 34, 36, 47, 49

*Haskell v. Socony Mobil Oil Co.*, 237 F.2d 707 (1st Cir. 1956*)*. . . . . . . . . . . . .  15

*Hellenic Lines, Ltd. v. Rhoditis,* 398 U.S. 306 (1970). . . . . . . . . . . . . . .  13, 15, 18

*Hopson v. Texaco, Inc.,* 383 U.S. 262 (1966). . . . . . . . . . . . . . . . . . . . . . . . .  15, 29

*Jones v. Southern Pac R.R.* 962 F.2d 447 (5th Cir. 1992). . . . . . . . . . . . . . . . .  54

*Lacey v. Cessna Aircraft Co.,("Lacey I")* 886 F.2d 628 (3d Cir. 1989). . . . . . .  51

*Lacey v. Cessna Aircraft Co.,("Lacey II")* 932 F.2d 170
 (3d Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . .   11, 26, 29, 30, 32, 48 49, 50, 52

*La Seguridad v. Transytyr Line,* 707 F.2d 1304 (11th Cir. 1983). . . . . . .  12, 55, 60

*Lauritzen v. Larson,* 345 U.S. 571 (1953). . . . . . . . . . . . . . . . . . . . . .  13, 14, 15, 48

*Lony v. E.I. Du Pont de Nemours & Co., Lony v. E.I. Du Pont
 de Nemours & Co. ("Lony I")*
 886 F.2d 628 (3d Cir. 1989). . . . . . . . . . . . . . .   25, 31, 32, 33, 34, 39, 41, 51, 55

*Lony v. E.I. Du Pont de Nemours & Co.,* ("Lony II")
 935 F.2d 604 (3d Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25, 54

*McDermott International, Inc. v. Wilander*, 498 U.S. 337 (1991). . . . . . . . . . . .  14

*Needham v. Phillips Petroleum Co. Of Norway*, 173 F.2d 1481
 (10th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

*Neely v. Club Med Management Services Inc.*,  63 F.3d 166
 (3rd Cir. 1995). . . . . . . . . .   11, 12, 13, 14, 15, 16, 18, 19, 20, 21, 22, 23, 24, 36, 50

*Nicol v. Gulf Fleet Supply Vessels, Inc.,* 743 F.2d 289 (5th Cir. 1984*)*. . . . . . . . .  11

*Piper Aircraft v. Reyno Hartzell Propeller, Inc.,*
 454 U.S. 235 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 29, 30, 47, 54

*Reid-Walen v. Hansen,* 933 F.2d 1390 (8th Cir. 1991). . . . . . . . . . . . . . . . . . . . . .  31

*Romero v. International Terminal Operating Co.,* 258 U.S. 354 (1959).  11, 13, 15

*Szumlicz v. Norwegian American Line, Inc.*, 698 F.2d 1192 (11th Cir. 1983). . .  11

*United States v. Magallanez,* 408 F.3d 672 (10th Cir. 2005). . . . . . . . . . . . . .  54

*USX v. Adriatic Ins. C.,* 345 F.3d 190 (3d Cir.2003). . . . . . . . . . . . . . . . . . . .  25

*Van Cuwenberghe v. Biard,* 486 U.S. 517 (1988). . . . . . . . . . . . . . . . . . . . . . .  39

*Veba-Chemie A.G. v M/V Getafix,* 711 F.2d 1243 (5th Cir. 1983).. . . . . . . . . .  57

*Windt v. Qwest Commc'ns Int'l, Inc.,* 529 F.3d 183 (3d Cir. 2008).. . . . . . . .  31, 57

*Zekic v. Reading & Bates Drilling Co.*, 536 F.Supp. 23 (E.D. La. 1981). . . . . .  22

*Zipfel v. Halliburton Co.,* 832 F.2d 1477 (9th Cir. 1987). . . . . . . . . . . . . . 11, 19, 22

### Foreign Cases

*IPOC International Growth Fund Ltd. v. LV Finance Group Ltd.* . . . . . . . . . . .  46

*Spilada Maritime Corp v. Cansulex Ltd* [1986] UKHL 10. . . . . . . . . . . . . . . .  27

### Statutes/Rules

28 U.S.C. §1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

46 U.S.C. § 30104. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 14

### Treatises

Grant Gilmore & Charles Black, Jr., *The Law of Admiralty,* § 6-63
(2d ed. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Edelman, *Forum non Conveniens: Its Application in Admiralty Law,*
15 J. Mar. L.& Com. 517 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# I.

## JURISDICTIONAL STATEMENT

The District Court of the Virgin Islands has subject matter jurisdiction of this matter pursuant to the Jones Act, 46 U.S.C. 30104 and under the General Maritime Laws.  Plaintiff, a seaman who was injured on December 26, 2012 in the service of the M/Y Olga while on navigable waters, filed her Complaint for Damages on November 19, 2014.

This Court has jurisdiction pursuant to 28 U.S.C. §1291 which grants United States courts of appeal jurisdiction to review all final decisions of the district courts. On March 30, 2016 the District Court of the Virgin Islands entered its Order granting Defendants' Motion to Dismiss for Forum *Non Conveniens* entered its Judgement unconditionally dismissing  Plaintiff's Complaint for Damages and ordering that the Clerk of Court close the case.  A judgment of dismissal is a final decision because it disposes of the entire controversy. *Collins v. Miller,* 525 U.S. 364, 370 (1920).

# II.

## STATEMENT OF ISSUES

Whether the District Court erred in dismissing Plaintiff's case for forum *non conveniens*?  JA-3 to JA-25; JA-119 to 139.

    A.      Whether the District Court erred in failing to perform a choice of law

analysis?  JA-9 to JA-14; JA-123 to JA-125.

B.    Whether the District Court erred in finding the British Virgin Islands ("BVI") is a suitable alternative forum?  JA-15to JA-24; JA-125 to JA-138.

C.    Whether the District Court erred in failing to consider and reasonable balance all the private and public interest factors?  JA-15 to JA-24; JA-125 to JA-138.

D.    Whether the District Court erred in failing to hold Defendants to their burden to provide sufficient and accurate information to properly balance the factors and failing to access the factors at the time of ruling on Defendant's motion?  JA-143; JA-145 to JA-160.

## III.

## RELATED CASES AND PROCEEDINGS

There are no related cases or proceedings.

## IV.

## STATEMENT OF THE CASE

A.    Relevant Facts

This case arises from personal injuries sustained by Plaintiff while she was a chef onboard the M/Y Olga. On November 27, 2012,. (Declaration of Michelle

Trotter at ¶ 2.) Calot located Plaintiff through Churchill Yachts, a company located in Fort Lauderdale, Florida. *Id.* Plaintiff had provided her name to Churchill Yachts to find chef jobs on private yachts. *Id.* Calot also telephoned Plaintiff at her Florida residence to negotiate the contract terms. *Id*. Calot informed Plaintiff the charter would be December 26, 2012 through January 5, 2013, with 10 guests and 5 crew persons. *Id*. Calot further advised Plaintiff the vessel was currently in Puerto Rico and would be brought to St. Thomas for provisioning on December 19 before moving to Scrub Island, BVI on December 22. *Id*.

On November 30, Calot contacted Plaintiff while she was in Florida to provide her with the guest menu preference sheets. *Id.* at ¶ 3. He requested she put together menus for guest approval and lists to provision the vessel before the charter. *Id*. Plaintiff performed these tasks in Florida. She was instructed to join the vessel 2-3 days before the charter to ensure the galley was properly set up and provisioned. *Id.* Ultimately, Calot requested Plaintiff oversee the final food provisioning in St. Thomas beginning December 19. *Id*.

Calot's communication with Plaintiff in Florida continued throughout December. On December 2, 2012, Calot contacted Plaintiff to confirm she received the guest preference sheets. *Id.* at ¶ 4. . That day, Calot provided Plaintiff with the contact details of his preferred produce supplier, The Fruit Bowl in St. Thomas. *Id.*

3

Plaintiff's work continued in Florida when, on December 5, Calot forwarded the guest schedule to Plaintiff indicating 10 guests were to arrive by private jet on December 26, at a location to be determined, 8 guests would depart on December 29, and 8 new guests would arrive on December 29 and depart January 5, 2013. *Id.* at ¶ 6. On December 7, Calot contacted Plaintiff requesting she place the meat and fish order with National Marine in Puerto Rico to provision the vessel while in Puerto Rico. *Id.* at ¶ 7. Calot also confirmed the vessel would likely be moved to St. Thomas on December 20, and confirmed Plaintiff needed join the vessel while it was in St. Thomas. *Id*. That day, Plaintiff placed the meat and fish order with National Marine from Florida. *Id.*

On December 8, 2012, Calot sent Plaintiff an inventory of the food currently on board the vessel. *Id.* at ¶ 8. On December 10, 2012, Plaintiff sent her menu plans to Calot, taking into account the changeover guests on December 29. *Id.* at ¶ 9. The next day, Calot contacted Plaintiff with the list of galley equipment on board. *Id.* at ¶ 10. He also confirmed the vessel would be moved from Puerto Rico to St. Thomas on December 19 and would remain there through December 22. *Id.* Calot asked whether Plaintiff wanted to join the vessel on December 19 or 20, 2012 and she responded that she preferred to arrive on December 19. *Id.*

On December 11, 2012, Maggie Vale at Churchill Yachts contacted Plaintiff

in Florida to follow up on her employment aboard the M/Y Olga. *Id.* at ¶ 10. At this time, Plaintiff shared her menu plans with Maggie. *Id*. Maggie had also arranged for the guests who were chartering the M/Y Olga during the time Plaintiff was to be a chef onboard. *Id.*

On December 14, 2012, Plaintiff sent Calot a shopping list for Costco in Puerto Rico and he responded the National Marine order would be delivered to the vessel on December 19. *Id.* at ¶ 11. On December 15, 2012, Plaintiff received an e-mail from Calot containing her ticket and travel itinerary from Regency Travel. *Id.* at ¶ 12. This indicated Plaintiff would arrive in St. Thomas on December 19 and depart from St. Thomas on January 8, 2013. *Id.* That day, Plaintiff e-mailed a second produce order for December 29, 2012, to be provided by the produce supplier, The Fruit Bowl, in St. Thomas. *Id.* at ¶ 13. On December 17, 2012, Plaintiff e-mailed a dry good checklist to Calot. *Id.* at ¶ 14

On December 19, 2012, Calot e-mailed Plaintiff requesting the Fruit Bowl produce delivery occur on December 22, in order to move the vessel to Scrub Island on December 22. *Id.* at ¶ 15. That day, Plaintiff arrived in St. Thomas at 4:30 p.m. and went to the vessel. *Id.* at ¶ 16.

The vessel remained in St. Thomas, while Plaintiff organized the galley and re-checked the provisioning. *Id.* at ¶ 17. The first produce delivery from The Fruit Bowl

arrived during this time. *Id.* Plaintiff determined the delivery was in poor condition and would not last until December 26. *Id.* Therefore, Plaintiff shopped in St. Thomas to re-provision the vessel with fresh produce. *Id.* Plaintiff's paid employment began while she was in St. Thomas and included a per diem payment for December 22 and 23, 2014 while the vessel was in St. Thomas. *Id.* at ¶ 18.

The vessel was eventually moved from St. Thomas to Scrub Island on December 24. *Id.* at ¶ 18. On December 26, 2012, at or near 9:00 a.m., the vessel was tied up at the dock in Scrub Island to allow Plaintiff to obtain certain herbs and spices for the vessel from the executive chef at Scrub Island. *Id.* at ¶ 19. The stairs that Plaintiff was required to traverse in order to discharge her duties as a chef aboard the M/Y Olga had uneven rise and runs and did not have a handrail. Complaint at ¶ 10. As a result, while descending the stairs, Plaintiff misstepped and fell, sustaining serious injuries. Complaint at ¶ 10. To the best of Plaintiff's knowledge, there were no witnesses to the actual fall and no one, including M/Y Olga crewmembers, were present. *Id.* at ¶ 23.

On December 28, 2012, the vessel returned to US Virgin Islands and anchored off St. John so the guests could use jet skis, which are not permitted in BVI waters. *Id.* at ¶ 20. That evening the vessel docked at Yacht Haven Grand on St. Thomas. *Id.* at ¶ 21. On December 29, 2012, a replacement chef boarded the vessel in St. Thomas.

*Id.* at ¶ 22. There was also a changeover of guests whereby guests scheduled to leave the vessel disembarked in St. Thomas and new guests boarded the vessel. *Id.* Plaintiff disembarked at this time to board a flight to Florida that afternoon. *Id.* Once back in Florida, Plaintiff received medical treatment at several Florida medical facilities

B.    Procedural History

On November 19, 2014, Plaintiff, Michelle Trotter filed her Complaint for Damages and Demand for Jury against Defendants 7R Holdings, LLC, Luis A. Ruby Gonzlaez and M/Y Olga, alleging causes of action for Negligence under the Jones Act, 46 U.S.C. § 30104, et. seq., and for Unseawothiness and Maintenance and Cure under General Maritime Law.  On March 6, 2015 Defendants filed a Motion to Dismiss for Forum *Non Conveniens*.  On March 27, 2015, Plaintiff filed an Opposition to Motion to Dismiss for Forum *Non Conveniens* and a Notice of Request for Judicial Notice in Support of Opposition to Motion to Dismiss for Forum *Non Conveniens*.  On April, 14, 2015 Defendants filed their Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss for Forum *Non Conveniens*.  On March 30, 2016 the District Court issued its Memorandum Opinion and Judgment unconditionally granting Defendants' motion, dismissing the case and ordering the Clerk to close the case.  On April 17, 2016, Plaintiff filed Notice of Appeal.

C.    Rulings Presented for Review

Plaintiff requests review of the Judgement of dismissal for forum *non conveniens* dated March 30, 2016.

## V.

## SUMMARY OF ARGUMENT

The District Court erred in failing to perform a choice of law analysis to determine whether United States substantive law should be applied to case or whether foreign law should apply.  The choice of law must be determined in order to properly consider the factors necessary to rule on a motion for forum *non conveniens* because the balance of the factors depends on the law to be applied.

The District Court erred in finding that the BVI is an adequate alternative forum for the trial of this matter because the Defendants are not subject to the personal jurisdiction of the BVI  and its laws do not provide a remedy for Plaintiff against the Defendants.  In addition, because Defendants, who are residents of and have their principal place of business in Puerrto Rico, have no apparent assets in the BVI to satisfy any judgement that could be obtained against Defendants.

The District Court erred in its failure to accord Plaintiff's choice of form the deference it is due and failed to articulate the amount of deference it did accord, if any.  Plaintiff is an American citizen who has filed suit in her home forum and,

therefore, her choice of forum is entitled to a strong presumption of convenience that can only be rebutted by a very strong showing that Defendants' will suffer oppression, vexation and harassment all out of proportion to Plaintiff's convenience if the case is tried in the Virgin Islands. The court must articulate the amount of deference it accorded to Plaintiff's choice.

The District Court erred in failing to consider all the relevant facts and factors to properly balance the public and private interests necessary in order to determine if the relative interests support dismissal or retaining the case. The court ignored many relevant facts and failed to properly apply the balancing test. The factors are weighed to determine if there is a valid reason to refrain for extending full defernce to Plaintiff's choice of forum. The court did not give proper weight to the individual factors or to the balance as a whole.

The District Court erred in failing to hold Defendants to their burden to provide adequate information for the court to determine the relative conveniences. The court was made aware of discrepancies in the factual allegations of Defendants but, nevertheless, based its decision on factually questionable information. Moreover, the court did not issue its ruling until a year after the motion was filed and critical facts had changed by the time the court dismissed the case. The determinations relevant to a forum *non conveniens* dismissal must be made at the time of the dismissal. The

facts that the court relied on were no longer true by the time the court dismissed the case.

## VI.

## ARGUMENT

I.    THE DISTRICT COURT ERRED IN FAILING TO PERFORM A CHOICE OF LAW ANALYSIS TO DETERMINE APPLICABLE SUBSTANTIVE LAW

Standard of Review:

The determination "of what substantive law would apply in..[plaintiff's] chosen forum is a legal question over which this court typically exercise plenary review." *Lacey v. Cessna Aircraft Co.,* 932 F.2d 170, 198 (3d Cir. 1991) (Nygaard dissent, noting that the majority "has expressly avoided deciding the question").

When a seaman brings an action, the court must first decide whether it has jurisdiction, and if so, whether U.S. law or another nation's law applies.   *Neely v. Club Med Management Services Inc.*, 63 F.3d 166, 174 (3rd Cir. 1995) (en banc); *see, also,* Grant Gilmore & Charles Black, Jr., *The Law of Admiralty,* § 6-63 (2d ed. 1975). Plaintiff's assertion of a Jones Act claim, along with her general maritime claims for unseaworthiness and maintenance and cure is, alone "sufficient to empower the District Court to assume jurisdiction over the case."   *Romero v. International*

*Terminal Operating Co.,* 258 U.S. 354, 359, 380 (1959).

Before proceeding with a forum non convenience analysis, the court must first make a choice of law determination as to whether U.S. law or the law of a foreign nation applies. *Zipfel v. Halliburton Co.,* 832 F.2d 1477, 1482 (9th Cir. 1987), *cert. denied, Crowley Maritime Corp. v.. Zipfel,* 486 U.S. 1054 (1988); *Nicol v. Gulf Fleet Supply Vessels, Inc.,* 743 F.2d 289, 292-93 (5th Cir. 1984); *Needham v. Phillips Petroleum Co. Of Norway*, 173 F.2d 1481, 1483 (10th Cir. 1983); *Szumlicz v. Norwegian American Line, Inc.*, 698 F.2d 1192. 1195 (11th Cir. 1983); See also Edelman*, Forum non Conveniens: Its Application in Admiralty Law,* 15 J. Mar. L.& Com. 517, 529-32 (1984).

A court cannot properly weigh the U.S. interest in exercising its jurisdiction unless it can first determine whether U.S. law is applicable or whether a foreign law exists that is more properly applied to the plaintiff's claims . *Neeley v. Club Med Management Services, Inc.*, 63 F.3d 166, 188 (3rd Cir. 1995) (*en banc*) (quoting *DeMateos v. Texaco*, Inc., 562 F.2d 895, 900 (3rd Cir. 1977). This is a threshold determination necessary to correctly analyze and weigh forum non convenience public interest factors, including the interests of the competing forums in having localized controversies decided within their courts; interests justifying imposition of jury duty on citizens of the respective forums and difficulties associated with

11

application of foreign law.  A court simply cannot weigh the factors necessary to balance the conveniences without a choice of law analysis.  *See La Seguridad v. Transytyr Line,* 707 F.2d 1304, 1309 (11th Cir. 1983)

The District Court erred in failing to perform a choice of law analysis.  The Court did not even make a cursory attempt to make the simple determination of whether Plaintiff's claims could be asserted under the Jones Act and general maritime law as alleged in the Complaint.  The Court simply said it did not know if U.S. Maritime Law was applicable.  JA- 23. As a result of its uncertainty, the court stated it would  "refrain from attributing much weight" to the Local Law factor and it attributed no weight to any U.S. interest in maintaining jurisdiction over a U.S. citizen seaman's U.S. maritime law claims alleged against the Defendants, all of whom are also U.S. citizens.  JA- 24.

In *Neely v. Club Med Management Services Inc.*, 63 F.3d 166 (3rd Cir. 1995) (en banc), this Court performed a comprehensive analysis and provided a detailed guide for district courts, based on Supreme Court rulings, to determine maritime choice of law and  balance U.S.  interests against foreign interests in cases with foreign connections. *Id.* at 181-82.  This Court's analysis applies the "*Lauritzen* factors" as enunciated by the Supreme Court in *Lauritzen v. Larson,* 345 U.S. 571 (1953) and further developed in *Romero v. International Terminal Operating Co.,*

12

358 U.S. 354 (1959) and *Hellenic Lines, Ltd. v. Rhoditis,* 398 U.S. 306 (1970). *Neely* at 174. In *Rhoditis,* the Supreme Court utilized the *Lauritzen* factors to ascertain the facts establishing contacts between the operative facts and the United States to determine if they are "substantial contacts" sufficient to support application of U.S. law. *Rhoditis* at 309 n.4.

These factors are to be applied to determine applicable choice of law in personal injury cases under both the Jones Act and general maritime law. *Neeley* at 176. A court must first determine whether there is a basis to apply U.S. Maritime Law. This Court, *en banc* instructs us that as long as a basis exists for the application of U.S. law, American interests are implicated. U.S. law should then be applied to the case, unless U.S. law conflicts with the laws of another forum whose contacts with the parties are so significant that the application of U.S. law would be "unreasonable". *Neeley* at 188. That is the key issue under *Lauritzen. Id.* at 175.

Under the Jones Act a seaman injured in the course of his employment may bring a civil action at law against her employer with the statutorily guaranteed right to a jury. The Act further provides that all laws of the United States regulating recovery for personal injury to railway workers also apply to seamen under the Jones Act. 46 U.S.C § 30104. Plaintiff qualifies as a seaman who was injured in the course of her employment.

13

In its unanimous opinion in *McDermott International, Inc. v. Wilander*, 498 U.S. 337,355-357 (1991), the Supreme Court held that an individual is a seaman if their duties contribute to the function of the vessel or accomplishment of its mission. The Court stated that cooks are seamen under both the Jones Act and general maritime law. *Id.* at 355-357. At the time of her accident, Plaintiff was returning to the Olga from a trip to obtain herbs to prepare a meal for the charter guests, in furtherance of her employment duties as chef. JA -142. Defendants dispute that Plaintiff was obtaining herbs for the meal and incorrectly argue that she was on a personal errand and, therefore, was not in the service of the vessel.

Whether she was fetching herbs or was on a personal errand is irrelevant. Courts have repeatedly and historically considered a seaman on shore leave to be acting in the course of his employment in the service of the vessel. *E.g. Haskell v. Socony Mobil Oil Co.*, 237 F.2d 707, 710 (1st Cir. 1956) (Holding that a seaman who was injured when he jumped from the window of a whore house was acting in the course of his employment because "[s]hore leave is a usual, traditional, and perhaps essential incident of a seaman's employment").

Moreover, Defendants, under the Jones Act, have a duty to provide a safe work place, including safe means of ingress and egress from the ship. They also have a duty to warn of the defective stairs leading to the dock, of which they knew or should have

14

known from the many times they docked at Sage Island.  In addition, the Supreme

Court has recognized that a third party's negligence may be imputed to a Jones Act

employer even though the employer does not own or control the premises where the

injury occurred.  *Hopson v. Texaco, Inc.,* 383 U.S. 262, 264 (1966).  Therefore,

Defendants have a non-delegable duty and may be held liable under the Jones Act

even though Plaintiff's injuries occurred on the steps to the dock where Olga was

berthed.

Likewise, a vessel is unseaworthy if a dangerous condition on the dock that

supplies the means of ingress and egress causes injuries to a seaman.  *E.g.,*

*Daughenbaugh v. Bethlehem Steel Corp.,* 891 F. 2d 1199, 1211, n.3 (6th Cir. 1989).

A seaman injured in the service of the ship, even on shore leave is entitled to

Maintenance and Cure.  Aguilar v. Standard Oil Co. Of New Jersey, 318 U.S. 724,

736 (1943).

Once maritime law is found to apply, the question of whether U.S. law should

be applied to the maritime claim depends upon a nonexhaustive list of factors set

forth by the Supreme Court in *Lauritzen*, 345 U.S. 571 (1953), *Hellenic Lines, Ltd.*

*v. Rhoditis*, 398 U.S. 306 (1970), and *Romero v. Int'l Terminal Operating Co.*, 358

U.S. 354 (the "Lauritzen factors"). *See Neely*, 63 F.3d at 170. These factors include:

(1) the place of the wrongful act, (2) the law of the flag,  (3) allegiance or domicile

of the injured, (4) allegiance of the defendant shipowner, (5) the place of contract, (6) the inaccessibility of a foreign forum, (7) the law of the forum, and (8) the shipowner's base of operations. *Lauritzen*, 345 U.S. at 583-93 and *Rhoditis*, 398 U.S. at 309 (applying these factors to claims arising under the Jones Act); *see also*, *Romero*, 358 U.S. 354 (1959) (applying these factors to claims arising under general maritime law). The consideration of these factors governs choice of law in Jones Act and U.S. general maritime law claims. *Neely*, 63 F.3d at 170.

In *Neely*, the Court interpreted the choice-of-law approach set forth by the Supreme Court as a "substantial contacts" test, which is designed to ensure that U.S. maritime law of personal injuries only applies to injuries that take place in foreign jurisdiction when significant U.S. interests are implicated. 63 F.3d 166, 182 (3d Cir. 1995). Therefore, Plaintiff must first, as a threshold requirement, demonstrate a basis for prescriptive jurisdiction, which provides a state authority to "make its law applicable to the activities, relations, or status of persons, or the interests of persons in things...." *Id.* at 184-86. Then, if prescriptive jurisdiction applies, the court may analyze the *Lauritzen/Rhoditis* factors to ensure that the application of U.S. law is reasonable. *Id.*

Injury to an American seaman provides a sufficient basis for prescriptive jurisdiction. *See Neely*, 63 F.3d at 186; *see also Baily v. Dolphin Int'l, Inc.*, 697 F.2d

16

1268, 1278 n. 25 (5th Cir. 1983) ("[A] sufficient American interest in a particular

transaction can rest on the presence of even one substantial contact between the

transaction and this country…"). In other words, injury to a seaman

who is an American citizen implicates significant American interests rendering

application of U.S. maritime law appropriate. *Id.* Plaintiff is an American citizen and

was a seaman at the time of the accident. Therefore, Plaintiff has established

prescriptive jurisdiction for this matter.

Once prescriptive jurisdiction is established, the Court must analyze the

reasonableness in applying U.S. law. *Id.* Reasonableness in maritime cases depends

on balancing U.S. and foreign interests by considering the *Lauritzen* factors.  *See id.*

at 182. In *Rhoditis*, the Supreme Court stressed that factors set forth in the *Lauritzen*

triad are not to be applied mechanically, but rather, the significance of each factor

depends on the unique facts of the case and those factors are not exhaustive of all

potentially relevant considerations. *See* 398 U.S. at 308. In *Neely*, this Court

considered the reasonableness of applying U.S. law after the plaintiff, a U.S. citizen,

was injured by the propellers of her employer's boat in St. Lucia. 63 F.3d at 171.

Although the accident occurred in St. Lucian waters, the defendant corporation was

organized under the laws of St. Lucia and the injuring vessel was registered in St.

Lucia, those factors did "not mean that U.S. law may not reasonably be applied under

17

the circumstances." *Id.* (holding that those facts alone were insufficient to conclude that St. Lucia's interests were "so threatened or strong that U.S.'s interests must be ignored."). The Court emphasized that the U.S. has "an overriding interest in assuring adequate compensation for its injured seamen." *Id.* Therefore, unless "virtually all of the Lauritzen factors point away from the United States, application of American law will be reasonable" given the  American interests. *Id.* at 190.

In conducting the reasonableness inquiry, the court must give weight to the relevant factors according to the "context of the incident at the heart of the suit." *Id.* Namely, where seamen are not engaging in "traditional international shipping activit[ies]," some factors take on a heightened significance whereas others will take on a diminished significance. *Id.*; *see also Zipfel v. Halliburton Co.*, 832 F.2d 1477, 1482-83 (9th Cir. 1987); *Chiazor v. Transworld Drilling Co.*, 648 F.2d 1015, 1019 (5th Cir. 1981). The incident at hand is a non-traditional maritime activity because the purpose and nature of the M/Y Olga was not the pursuit of international commerce through the transportation of merchandise, goods or people. Rather, the vessel at issue was chartered for a pleasure cruise. *See Neely*, 63 F.3d at 191 (finding that the transportation of tourists from beach to reef for scuba diving was a non-traditional Jones Act activity). Given the non-traditional nature of the activity at hand, the factors that have a heightened significance within this context specifically include

the place of the wrongful act, place of contract, allegiance of the defendant and allegiance or domicile of the injured according to *Neely*. *Id.*

A.    Place of the Wrongful Act

Although the place of the wrongful act can take on a heightened importance in a nontraditional maritime context, the place of the wrongful act in this case was merely fortuitous. Unlike cases where a seaman is injured on a permanently stationed vessel or on a vessel that navigates within the same jurisdiction regularly, Olga regularly engaged in maritime activities in both the BVI and the USVI. *See e.g.*, *Fogleman v. ARAMCO*, 920 F.2d 278, 282 (5th Cir. 1991) (injury stemmed from work performed on a permanently situated offshore oil rig and therefore the place of injury assumed greater importance); *Neely*, 63 F. 3d at 191 (injury stemmed from work performed on a vessel that only traveled from shore to reef for scuba diving within one nation's navigable waters).

While Plaintiff's injury did actually take place while the Olga was docked on the navigable waters of the BVI, JA-142. the incident just as easily could have occurred when Olga was docked in the USVI. Within the span of just nine days, Olga was within the navigable waters of the USVI for provisioning (December 20-24), pleasure activities (December 28), and for a changeover of guests (December 29). JA 142-143. Because Olga regularly traveled between multiple nations, the actual site

19

of injury has little significant.  The place of injury is "largely fortuitous when the seaman [was] exposed to the same risks throughout the course of the journey and [the] accident happen[ed] to occur in a particular locale." *Neely*, 63 F.3d at 191. Therefore, the place Plaintiff's injury is of  negligible significance for purposes of determining the choice of law.

B.    Place of Contract

In the traditional shipping context, the place of contracting takes on lesser significance because international shippers take on crew members as needed in various nations' ports. *See Lauritzen*, 345 U.S. at 588. In contrast, the place of contract takes on heightened importance within the non-traditional maritime employment context because employers need not take on crewmembers at random ports and often select their employees in advance. *Neely*, 63 F.3d at 192.

Here, the place of contracting was in the U.S. Calot contacted Plaintiff in the U.S. after receiving her information from a Florida broker, Churchill Yachts. All subsequent contractual negotiations between Calot and Plaintiff occurred while she was in Florida. She formed a written contract to work on the M/Y Olga, with offer and acceptance occurring via email, while she was in Florida and the M/Y Olga was docked in Puerto Rico. She also began working per Calot's request while in Florida. This contract provided for her employment to begin in St. Thomas, commencing with

the provisioning of the M/Y Olga in the USVI. JA-141. Plaintiff's U.S. employment
contract for a voyage to commence in the U.S. supports the reasonableness of
applying U.S. law.

C.     Allegiance of the Defendant Shipowner

In both traditional and non-traditional maritime employment scenarios, the allegiance
of the defendants presents an important consideration for the reasonableness of
applying U.S. law. *Id.* at 194. In *Neely*, this Court stated that the court must consider
the base of daily operations of the vessel, the corporate bases of the defendants, and
the operational contacts of the defendants within the U.S. Here, Olga's daily
operations were not statically based out of the BVI. Rather, Olga docked and traveled
in and out of the USVI on a regular basis. Although the vessel was registered in the
BVI, 7R Holdings has its principal place of business in Puerto Rico. The allegiance
of the defendant shipowner is not controlling. *See id.* ( the court stated defendant's
corporate office connections create only a "weak interest" in applying its law to
incidents involving that corporation). Olga's regular base of operations shifted from
the BVI and the USVI,and it also had significant operational contacts with the U.S.
Not only did Olga engage in substantial marketing to American tourists, but it also
specifically hired the Plaintiff by using the services of a U.S. broker, to hire a U.S.
chef. That same Florida broker was also responsible for booking the guests on Olga's

charters.    JA-142 Additionally, guests embarked and disembarked in USVI. Therefore, the U.S. interests' are heavily implicated, which supports the application of U.S. law.

D.    Allegiance or Domicile of the Injured

Several cases hold that a seaman's allegiance is of increased importance in non-traditional shipping contexts. *See, e.g., Zipfel*, 832 F.2d at 1483; *Ali v. Offshore Co.,* 753 F.2d 1327, 1331 (5th Cir. 1985); *Zekic v. Reading & Bates Drilling Co.*, 536 F.Supp. 23, 25 (E.D. La. 1981). In fact, in both non-traditional and traditional contexts, an injured seaman's connection to the U.S. is considered one of the most important factors demonstrating the reasonableness of the application of U.S. law. *See Neely*, 63 F.3d at 195. Because U.S. seamen were the primary concern of Congress in enacting the Jones Act, "courts should consider claims brought by U.S. seamen as manifesting by definition much of the necessary substantiality of connection" to U.S. interests. *Id.* at 196.

Therefore, because Plaintiff is a U.S. seaman, this factor, in conjunction the other factors, clearly demonstrates that the U.S. has more than enough interest in the incident to apply U.S. law. *See id.* at 197. The remaining *Lauritzen* factors, include the law of the flag, inaccessibility of a foreign forum, and law of the forum. The factors have decreased importance the application of U.S. law in the non-traditional

22

context. *Id*.

### E.    Law of the Flag

There is no information as to what flag Olga flew, if any. Although, Defendants have alleged that Olga was registered in the BVI, as a registration of convenience, these facts would normally be entitled to little weight. *Id.* In this case, they are entitled to no consideration. They are irrelevant because, as Plaintiff fully discusses below, the location, place of flag and place of registration are unknown because the vessel has been sold. *See infra.*

### F.    Inaccessibility of a Foreign Forum

As discussed more fully below, the proposed alternative forum, the BVI is not accessible to Plaintiff because Defendants are not subject to personal jurisdiction there and the BVI has little interest in this matter. Under the facts of this case, BVI is not the "natural forum" so the BVI courts would decline to exercise jurisdiction, even if personal jurisdiction were available. Plaintiff could not meet the burden of demonstrating that BVI is the most convenient forum, as required by BVI law.

### G.    Law of the Forum

Plaintiff provides a full discussion of this topic below. The common law tort law available in the BVI is not applicable to Plaintiff's claims. It does not provide her a remedy against Defendants. BVI has little interest in this controversy between

American citizens.

American contacts are "substantial", and "significant American interests are implicated", if the matter involves *either* an injury to an American seaman *or* American Defendants. *Neely* at 182. We have both an injured American seaman and both Defendants are U.S. citizens. Moreover, as a whole, the factors strongly favor application of U.S. law. This Court emphasized in *Neely* the "overriding interest" the U.S. has in assuring that its seamen are adequately compensated. *Neeley* at 171. Unless "virtually all of the *Lauritzen* factors point away from the United States, application of American law will be reasonable." The balance of the factors clearly indicate it is not only reasonable to apply U.S. law but, it would be error not to.

II.     THE BVI IS NOT A SUITABLE ALTERNATIVE FORUM, THEREFORE THE COURT ERRED IN DISMISSING PLAINTIFF'S ACTION

Standard of Review:

A district court may exercise sound discretion in determining to dismiss for forum non conveniens if an adequate alternative forum has jurisdiction to try the case and trial in the chosen forum would be oppressive and vexatious to defendant out of all proportion to plaintiff's convenience. *Lony v. E.I. Du Pont de Nemours & Co., Lony v. E.I. Du Pont de Nemours & Co. ("Lony I")* 886 F.2d 628, 632 (3d Cir. 1989).

District court determinations of law are reviewed de novo. *USX v. Adriatic Ins. C.,* 345 F.3d 190, 198-99 (3d Cir.2003). Issues of jurisdiction are solely questions of law. *Lony I* at 632.

A forum is inadequate if it lacks jurisdiction over the defendants, does not "permit litigation of the subject matter of the dispute" or if the remedy offered is "is clearly unsatisfactory." *Id.* Defendants bear the burden of establishing these elements. *Lony v. E.I. Du Pont de Nemours & Co.,* ("*Lony II*") 935 F.2d 604, 609 (3d Cir. 1991). The existence of an adequate alternative forum is a threshold question. If there is no such forum, Defendant's motion must be denied with no further analysis necessary. *See Piper Aircraft v. Reyno Hartzell Propeller, Inc.,* 454 U.S. 235, 254 n.22 (1981).

The BVI is not an adequate alternative forum because it has no jurisdiction over *any* of the Defendants and Defendants have not established that BVI law provides *any* theory for Plaintiff to recover against Defendants. In addition, as Plaintiff discusses in § IV *infra*, she would likely be unable to satisfy and judgement rendered.

The proposed forum must have jurisdiction over all the Defendants. *Lacey v. Cessna Aircraft Co. ("Lacey II"),* 932 F.2d 170, 177 (3d Cir. (1991). In finding BVI jurisdiction over all Defendants, the district court relied on an unsupported finding

25

that Defendants have "stipulated that they will submit themselves to the jurisdiction

of the BVI courts." JA-9, 12. There was no such stipulation. Defense counsel stated

in her brief that Defendants would travel to the BVI to accept "service in" and their

legal expert opined that would probably suffice. JA - 163-164, 162. Defendant

Gonzales submitted an affidavit which is conspicuously devoid of any such offer on

his own behalf or on behalf of the other Defendants. *See* JA - 54. A statement by

counsel in a brief is not binding on the party or enforceable in any court.

Defendants are not subject to jurisdiction for Plaintiff's claims by service

outside BVI. Pursuant to EC CPR 7.2 service outside the jurisdiction may only be

made if the court grants leave and EC CPR 7.3 allows it. JA-71. Although rule 7.3(4)

allows service out for tort claims, (JA-72) Plaintiff's claims are not tort claims, they

are general maritime law claims and a statutory claim. Moreover, when leave is

required, it will not be granted unless Plaintiff can satisfy the court that BVI is the

most appropriate and convenient forum. JA-74. Plaintiff has the burden to establish

that the forum "is distinctly more suitable for the ends of justice" than another. JA-

77. The court will consider ,availability of witnesses (JA- 77), nationality of expert

witnesses and the relative expense that would be "thrust upon the plaintiffs" in the

forum. JA-78. The court will look to the "natural forum" considering the parties

residence, where they carry on business, the law governing the transaction,

availability of witnesses and whether there is another more appropriate nation to try the case. JA-62 ¶18, 63 ¶19, JA-83.

   If the Defendants' connection to the forum is "fragile", "for example, if he is served ...during a short visit to the country" it will "prove that there is another clearly more appropriate forum for the trial overseas." JA-83. If the action has commenced but the court concludes at a later stage that some other forum is prima facie clearly more appropriate for trial, the court will stay the action. JA- 83.

   The court in *Spilada Maritime Corp v. Cansulex Ltd* [1986] UKHL 10 stated, jurisdiction exercised by service outside the country is "exorbitant" and "it is becomes a very serious question ...whether this court ought to put a foreigner, who owes no allegiance here, to the inconvenience and annoyance of being brought to contest his rights in this country and...this court ought to be exceedingly careful before it allows a writ to be served out of the jurisdiction." JA-86.

   Plaintiff cannot prove to the BVI court that it is the natural forum because it is not. Therefore, Plaintiff will not meet her burden to convince the court it should take the extraordinary action of allowing service outside its territory. It appears the court would also frown upon exercising jurisdiction over the Defendants if they were served within the forum while they were there just a short time. Clearly, the court erred in dismissing Plaintiff's claim under the incorrect assumption that BVI has

27

jurisdiction over Defendants.

Additionally, Defendants have not established that BVI permits litigation of the subject matter of the dispute, as is required to establish and adequate forum. *See Piper* at 254 n.22. Defendants assert that BVI is an adequate forum because it recognizes common law tort claims, but have not suggested any common law tort theory that allows Plaintiff to successfully prosecute a claim against these Defendants for a condition on property they do not control.

Both the Jones Act and unseaworthiness causes of action allow a condition on the dock to be imputed to Defendants even though they do not control the area where the seaman is injured. *E.g., Hopson v. Texaco, Inc.,* 383 U.S. 262, 264 (1966) (Jones Act), *Daughenbaugh v. Bethlehem Steel Corp.,* 891 F.2d 1199, 1211 n.3 (6th Cir. 1989) (unseaworthiness). Likewise, a seaman injured in the service of the ship, even on shore leave, is entitled to maintenance and cure without any fault on the part of the vessel. *Aguilar v. Standard Oil Co. Of New Jersey,* 318 U.S. 724, 736 (1943).

Basically, Defendants' position is that BVI is an appropriate forum, despite there being no remedy against them under common law, because they believe that, instead of litigating her claims against them, Plaintiff should go to the BVI and assert a tort claim against the dock owner. JA-21.

It was error to determine that BVI is an appropriate forum because Defendants

have not demonstrated that there is a remedy available to Plaintiff or that BVI will permit litigation of the subject matter of Plaintiff's claims or that BVI will accept jurisdiction. If Plaintiff's ability to pursue her claims in the alternate forum "would be emasculated", the forum is not suitable. *See, Lacey II*, 932 F.2d at 183, n.10, *Piper*, at 254 n.22. Plaintiff would have the impossible burden of attempting to prove that BVI is the natural forum. That burden, in itself, is enough to outweigh any minor inconvenience to Defendants in Plaintiff's forum. "If judge decides that the balance factors favor such foreign forum, the trial judge must finally ensure that the plaintiffs can reinstate their suit in the alternative forum without undue inconvenience or prejudice." *Piper* at 255. Plaintiff's case has been dismissed and she has no forum to go to. This is clearly error.

III.    THE COURT FAILED TO ACCORD THE LEVEL OF DEFERENCE DUE TO PLAINTIFF'S CHOICE OF FORUM OR TO ARTICULATE THE DEFERENCE IT ACCORDED

Standard of Review:

Consideration and balancing of relevant public and private interest factors, as well as, consideration and determination of deference due plaintiff's choice of forum is subject to review for abuse of discretion. *Lacey v. Cessna Aircraft Co.,* 932 F.2d

170, 178 (3d Cir. 1991). (*"Lacey II"*)

If the court has properly determined that the alternate forum is adequate, the next step is to determine whether the defendant has carried its burden to rebut the strong presumption of convenience of the plaintiff's chosen forum.   The plaintiff's choice "should rarely be disturbed." *Piper ,* 454 U.S. 235, 255 (1981)

When, as here, the plaintiff is a U.S. citizen, her "home forum" is any federal district in the United States, not the particular district where she lives.  *E.g., Reid-Walen v. Hansen,* 933 F.2d 1390, 1394 (8ᵗʰ Cir. 1991)) and that forum is entitled to "a strong presumption of convenience." *Windt v. Qwest Commc'ns Int'l, Inc.,* 529 F.3d 183, 190 (3d Cir. 2008).

The court must state the amount of deference it has given to plaintiff's choice. *Lacey I,* 862 F.2d at 45.   The court's must determine if there is a valid reason to "refrain from extending *full deference*" to the plaintiff's choice of forum.  .  *Lony v. E.I. Du Pont de Nemours & Co.,* (*"Lony I"*) 866 F.2d 628, 634 (3d Cir. 1989)(emphasis added).   This Court criticized the district court for its failure to specify why the foreign plaintiff's choice of forum was not entitled to the "full deference" standard that applies U.S. citizen plaintiffs. *Id.*

In this case,,the court did state the law that a U.S. citizen who has chosen her home forum, is entitled to "great deference" and a "strong presumption of

convenience...exists" which "may only be overcome when the balance of the public and private factors clearly favors an alternate forum."    JA- 15. (quoting *Windt v. Qwest Commc'ns Int'l, Inc.,* 529 F.3d 183, 190 (3rd Cir. 2008).  In *Lony I*, this Court specifically held that, "simply restating the rule and filling in the names of the parties" without a factual analysis of convenience "is an abuse of discretion and constitutes reversible error." *Lony I* at 634.

 If Plaintiff cannot prove damages and causation, she loses the case.  Where evidence necessary to an essential element of plaintiff's case "predominates in the plaintiff's choice of forum, the court should be quite cautious in disregarding such an essential fact of the litigation." *Lony I* at 634. Virtually all of Plaintiff's damage and causation evidence is located in the  the United States, Plaintiff's home forum.

The presumption of convenience is bolstered even more by the fact that Defendants are also U.S. citizens. That, in itself, has considerable weight in demonstrating the convenience of plaintiff's choice. *See Lony I* at 634.  St. Thomas is only 18.33 miles and thirty minutes by air from Puerto Rico, where Defendants' reside.  Nevertheless, the court ignored the presumption and did not articulate or discuss the convenience or weight, if any, it actually accorded the choice of Plaintiff's home forum.

In this case the presumption of convenience to Plaintiff is corroborated by the

31

fact that Defendants arranged Plaintiff's travel so that she would both start and end her voyage aboard the vessel in St. Thomas.  Defendants allege this accommodation was made at Plaintiffs request.  JA- 38, ¶ 6; 57, ¶ 8.  If so, that request was a matter of convenience, efficiency and economy, not forum shopping or to oppress, vex or harass Defendants.  Defendants' utilize the facilities, waters and ports of the Virgin Islands for provisioning and in conducting their charters for their own convenience and the convenience and entertainment of their charter guests.  *See* JA-140-144.  In doing so, they avail themselves of the benefits of commerce and the laws of the Virgin Islands.  It is surely not inconvenient or unfair be called into court there.  The already strong presumption of convenience inherent in Plaintiff's home forum is further bolstered by convenience to Defendants and there is inadequate evidence to overcome the presumption.

IV.    THE DISTRICT COURT FAILED TO CONSIDER AND REASONABLY BALANCE ALL OF THE PRIVATE AND PUBLIC INTEREST FACTORS, AND , THEREFORE, THE DISMISSAL MUST BE REVERSED

Standard of Review:

Consideration of relevant public and private interest factors and the balancing

32

of those factors is subject to review for abuse of discretion. *Lacey v. Cessna Aircraft Co.,* 932 F.2d 170, 178 (3d Cir. 1991). (*"Lacey II"*).

In *Lony I*, this Court discussed the factors the lower court must consider and weigh to determine if there is a valid reason to "refrain from extending *full deference* to the plaintiffs choice of forum" as mandated by *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501 (1947). *Lony I* at 634 (emphasis added) (*Lony I.* Involved a German plaintiff, and was not a maritime case).

The private interest factors the court must address are: " [1]  relative ease of access to sources of proof; [2] availability of compulsory process for attendance of unwilling [witnesses]; [3]cost of obtaining attendance of willing, witnesses;... [4] possibility of view of premises, if view would be appropriate to the action; ... [5] all other practical problems that make trial of a case easy, expeditious and inexpensive...[and] [6] enforcibility of a judgment if one is obtained." *Gilbert* at 508.

The public interest factors to be considered are:  "[1] the administrative difficulties flowing from court congestion; [2] the 'local interest in having localized controversies decided at home;' [3] the interest in having the trial...in a forum that is at home with the law that must govern the action; [4] the avoidance of unnecessary problems in conflict of laws, or the application of foreign law; and [5] the unfairness of burdening citizens in an unrelated forum with jury duty." *Lony I.* at 640.

33

A.    The Court Failed to Even Consider Five of the Eleven Relevant *Gilbert*

Factors

1.    The court failed to consider the" relative costs of obtaining the

attendance of willing witnesses."  This factor is clearly relevant and failure to

consider it is reversible error.  *See, Lony I* at 634.  The court erred in its failure to

evaluate the substance of the dispute to determine whether the witnesses cited by

Defendants are relevant or critical.  There are no witnesses in the BVI who are

relevant or necessary but, if there were, the cost of transporting them to St. Thomas

is negligible.[1]  There are, however, numerous critical  witnesses in the Miami area,

including, all of Plaintiff's causation and damage witnesses and two former

crewmembers,[2]  who are no longer under Defendant's control.

Flights from Miami to Tortola take twice as long as flights from Miami to St.

Thomas because there are no direct flights to Tortola from the mainland and all

flights from Miami to Tortola require a change of airlines in Puerto Rico.  In addition

to the cost of extra travel time, flights from Miami to Tortola cost much more than

---

[1]

There are three companies that provide ferry service between Tortola and St.
Thomas, providing approximately 18 trips per day at a cost of $60.00 per round trip.

[2]

Mate David McCoy resides in Ft. Lauderdale. (JA-57) as does Captain Calot,
according to his Facebook page and LinkedIn page, for which Plaintiff has requested
judicial notice

flights from Miami to St. Thomas. [3]

Tortola is only 18.33 miles from St. Thomas and, where the requested forum is geographically close to the current forum, the convenience of the parties, witnesses and practical considerations weigh against dismissal. *Conners v. UUU Productions, Inc.* No. 03-CV-6420, 2004 WL 834726 at 6 (E.D. Pa. Mar. 15, 2004) ("Given the proximity of the Eastern District of Pennsylvania and the District of New Jersey, factors related to the convenience of the parties or witnesses and practical considerations do not render one forum significantly more convenient than the other.")

There are no necessary witnesses in the BVI, the bulk of the necessary witnesses are in Florida and the time and expense for travel to the BVI from Florida far exceeds that for travel to St. Thomas. Therefore, if the court had considered this factor, the only reasonable conclusion is that this factor weighs very heavily against dismissal.

2.    The court also failed to consider the enforcibility of a judgment, if one is obtained, which is a crucial factor. *Gilbert* at 508. In its discussion of the adequacy of the alternate forum, the court simply stated that, in the BVI, a party may

---

[3]

Plaintiff has requested judicial notice of Google Flight information.

35

enforce a judgment by writ of execution or attachment. JA-11. The court failed to recognize that those procedures are of no use unless Defendants have substantial assets physically present in the BVI at the time a judgment is rendered. The vessel was sold prior to the dismissal.[4] Defendants are not domiciled in the BVI and Defendants have provided no information of assets in the BVI. Plaintiff would be unable to satisfy a BVI judgment. This factor should be accorded extremely heavy weight against dismissal.

3.    The court failed to consider the "local interest in having localized controversies decided at home" factor. In the section entitled "Conclusion" the court simply stated, without explanation or discussion, it "expects that the BVI's judiciary would have a keen interest in resolving" the dispute. JA-24-25.

Plaintiff is a U.S. citizen, and, as this Court has recognized, "when an American worker... is injured, application of United States law will affect the interests and relations of Americans, and there are likely to be substantial effects with the United States.. .[A]pplication of American maritime law in suits for personal injuries to American seamen...affects the interests of nationals of the Unites States" *Neely v. Club Med Management Services, Inc.,* 63 F.3d 166, 185 (3d Cir. 1995). Plaintiff

---

[4]

Plaintiff has requested judicial notice of the vessel's sale listing and ultimate sale.

obtained the job through the charter management company, Churchill Yachts, in Florida that Defendants utilize for management and bookings, including the charter during which Plaintiff was injured. JA-142. The employment contract was negotiated and entered into by both parties within the U.S. JA- 140. Plaintiff performed a substantial amount of her duties within the U.S.  She worked in Florida from November 30 to December 19, 2012  reviewing the guests' menu preferences, preparing menus, making provisioning lists, placing provisioning orders with several different providers in St. Thomas and in Puerto Rico, whom Defendants identified as their "preferred providers."  During this time, Plaintiff was also in contact with the guests to discuss menus. JA - 140-141.

On December 19, 2012, with the St. Thomas round trip tickets sent by Defendants, Plaintiff flew from Miami to St. Thomas, where the vessel was docked. From December 20 until December 24, 2012, Plaintiff worked aboard the vessel in St. Thomas organizing the galley and checking provisioning orders.  The produce delivery was unacceptable, so it was necessary for Plaintiff to shop in St. Thomas to replace the  produce.  JA-142.

The vessel moved to the BVI on December 24 where it remained for three full days.  On December 28, the vessel reentered the U.S. and anchored off St. John so that the guests could engage in activities that are illegal in the BVI. JA - 142. That

evening the vessel again docked in St. Thomas, at Yacht Haven Grande. On December 29, 2012 Plaintiff disembarked in St. Thomas and a replacement chef joined the vessel there. JA - 143 One group of guests disembarked and a new group joined the vessel in St. Thomas. JA- 143.

Plaintiff's employment was almost entirely within the United States. She worked within the U.S. for 26 of 29 days and was in the BVI for just three full days. The vessel operations within the Virgin Islands are substantial and the Virgin Islands have a strong interest in regulating competing businesses operating in the territory and vessels who employ U.S. citizens and market their charters in the U.S. to tourists. *Neely* at 194, *see also Lony I* at 642. The Defendants are U.S. citizens with whom the BVI has no interest.

4.     The court failed to consider the "local interest in having localized controversies decided at home" factor. The court should have recognized the strong U.S. interests discussed above and the strong Virgin Islands interests discussed below in relation to the jury duty factor.

5.     The court failed to consider the interest in having the trial in a forum familiar with the law to be applied factor. The court erred in failing to conduct the necessary choice of law analysis outlined above and, as a result, compounded the error by its inability to consider this factor.

38

B.      With Respect to the Factors it Did Consider, the Court Failed to
Acknowledge Relevant Facts and Clearly Erred in Analyzing and
Weighing the Public and Private Interest Factors

The private interest factors that the court considered were:

1.  Access to sources of proof and attendance of unwilling witnesses:

(The court combines these factors calls it " Evidence and Eyewitnesses" JA-
57). The court found "[t]his factor strongly favors the case being heard in the BVI"
(JA- 143)  based on solely on the following information:

a.      The Captain speculated with absolutely no foundation that there could
possibly be Scrub Island Resort employees with knowledge of
the incident.  Defendants provided no reason to believe that such
witnesses exist.  The evidence is that there were no witnesses to the
accident.

b.      Immediately following the accident, Plaintiff went to Peebles Hospital
for an initial exam and the Doctors will have information about her
initial condition and treatment.

Testimony from the E.R. doctor is not essential because, in reality, E.R.
doctors are seldom called at trial and will not be necessary in this action.

Any information Plaintiff provided will have been contemporaneously

39

recorded in the medical record which will be available for trial in the U.S.

c.    Only one of the crew members is a U.S. citizen and the remainder of the crew consists of two Mexican residents and one Thai resident and Captain Calot, a Canadian resident. JA- 20. In fact, according to his social media, Captain Calot now resides in Florida and is no longer affiliated with Defendants. *See* discussion *infra*. Therefore, two crew members are in the U.S. and none are available in the BVI. None of the crew members witnessed the accident (JA- 143) but if they have relevant testimony, two of them can be compelled in the U.S. but none would be available in the BVI. Unavailability, in the suggested forum, of former employees no longer under defendants' control weighs against dismissal. *Lacey II* at 183-84.

In *Van Cuwenberghe v. Biard,* 486 U.S. 517 (1988), the Court stated "the district court must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action." *Id.* at 528. If the evidence that is unavailable in the forum "is not essential (e.g., it is merely cumulative or corroborative)" it should not

40

be considered in the balance.  *See Lony I,* 886 F.2d 628, 635.  There are no potentially relevant or essential witnesses subject to BVI jurisdiction but there are two former crew members subject to subpoena in Plaintiff's forum.  Records from Pebbles will also be available for use at trial in St. Thomas.  If properly weighed,  these factors clearly should strongly favor Plaintiff's home forum, not dismissal.

The District Court failed to consider even the basic evidence Plaintiff would need to establish causation and damages or the need for expert testimony.  The court failed to consider the following

a.    The medical testimony of Plaintiff's subsequent treating physicians and other medical providers in the U.S., who have treated and assessed her condition, prognosis and expectation regarding maximum cure is essential.  These witnesses have access to the Pebbles Hospital records and have incorporated them into Plaintiff's diagnosis and treatment plan. These witnesses are not available in the BVI.

b.    The court did not consider that Defendants will likely want to conduct a defense medical exam of Plaintiff and would require the examining doctor to testify regarding the findings.  This would cause substantial inconvenience and expense for both Plaintiff and Defendants in the BVI.

c.    Witnesses and documentary evidence regarding Plaintiff's loss of

earnings are located in the United States.

d.    Evidence regarding the rate and amount of maintenance owed to Plaintiff is located in the United States.

e.    Evidence related to Plaintiff's claim for cure is located in the United States.

f.    Evidence to support Plaintiff's claim for punitive damages for arbitrary and capricious failure to pay maintenance and cure to Plaintiff is located in the United States.

g.    Although Defendants argued that, if the case were litigated in the BVI, evidence and testimony from non-parties in the United States could be obtained through Letters of Request.  JA - 165).  The procedure in the BVI is modeled on Canadian law (JA - 64).  As this Court expressly recognized in *Lacey II*, the issuance of Letters of Request in Canada is an extremely complex, cumbersome, time consuming and expensive process.  *Lacey II* at 184.

In short, the District Court found that non-existent and non-essential witnesses in the BVI "strongly favor the case being heard in the BVI" (JA - 20) while ignoring every source of testimony and evidence that is essential to prove and to defend the alleged claims.  The court clearly abused its discretion because it did not consider the

relevant factors, did not hold the Defendants to their burden and the balancing of the Evidence and Eyewitness Factor is clearly not reasonable.

2.    Premises:

The court found this factor favors dismissal.[5] JA-21. Plaintiff has never made such an allegation)The court concludes that, if the vessel can be considered a premises owned by a BVI corporation, that factor weigh in favor of dismissal.  JA-21. Plaintiff never alleged that the accident occurred at sea or aboard the vessel.  The court clearly abused its discretion in finding that Plaintiff alleged the accident occurred at sea.

The court next concluded that Defendants believe that Plaintiff should sue Scrub Island Resort instead of pursuing her claims against the named Defendants and weighed that fact in favor of dismissal.   It is clearly abuse of discretion for the court to make a judgment on the merits of Defendants' allegations at this stage of the litigation, when there has not even been an answer to the Complaint.  This finding is particularly egregious because the court made this judgement while completely ignoring the fact that Plaintiff's claims under the Jones Act and for unseaworthiness and maintenance and cure all allow recovery for accidents occurring on land which

---

[5]

The court erroneously stated that Plaintiff "alleges the accident did not occur on any premises, but rather at sea."

is controlled by third parties.  *See* discussion *supra* § I.

If the court had considered the correct premises, the fact would not favor dismissal because a view would not be helpful after the passage of so many years. The wooden stairs to the dock would not be in the same condition as at the time of the accident in 2012 and, thus, would not be relevant..  Plaintiff has photos of the stairs as they existed at the time of the accident, which is the relevant evidence.  Those photos are located in the USVI and, therefore, this factor weighs in favor of Plaintiff's home forum.

3.  Other Practical Considerations:

The court found that this factor also favors dismissal because the following findings would make trial in the BVI  "eas[ier], expeditious and inexpensive" based on the following findings:

a.      The parties and witnesses would incur significant expenses traveling to St. Thomas but litigating in the BVI would reduce the costs.  JA- 21. In fact, airfare for traveling from Puerto Rico or Miami to St. Thomas is significantly less, almost half the cost of traveling to the BVI.[6]  There are no parties or witnesses in the BVI so the travel costs of transporting everyone would be substantially higher in the BVI.  The costs of

---

[6]

*See* Plaintiff's motion for judicial notice of comparative air travel information.

convenience and time are also substantially more for travel to the BVI because there are no direct flights from the mainland to the BVI.  To fly from Miami to the BVI, passengers must change airlines in either Puerto Rico or St. Thomas.  Consequently, the flight takes twice as long as flying to St. Thomas.  The court clearly abused its discretion in finding that spending twice as much money and taking twice as much travel time renders the BVI a more "easy, expeditious and inexpensive" forum.

b.    "If the proceeding were carried out in St. Thomas, there would be difficulty in scheduling matters that required the parties' presence.  The parties would need to come to St. Thomas for hearings.  If the Court needed to quickly change a date or time, this would further inconvenience the parties and witnesses." JA - 22. It is difficult to understand why these facts were considered to favor trial in the BVI. The same inconvenience would apply to hearings in the BVI, but would be magnified by the extra cost and time involved in travel to the BVI compared to St. Thomas. The court also failed to consider the additional inconvenience and difficulty of in the BVI flowing from the fact that, as Defendants point out, the BVI courts set very tight deadlines with strict penalties for non-compliance.  JA-64, ¶23.

Factors four, five and six below are the only Public Interest factors considered by the court:

4.    Administrative Difficulties from Court Congestion:

The court considered this factor neutral because "Defendants do not actively argue this factor is relevant" and "[t]he court is without information regarding the congestion of the BVI courts."  JA - 24.  However, the court failed to consider information before the court that there is a great deal of congestion in the BVI courts. In the *IPOC International Growth Fund Ltd. v. LV Finance Group Ltd.* case that was provided to the court by Defendants (JA-93-115), The court stated that BVI courts struggle to avoid administering "summary justice" because "[j]udges in this jurisdiction work under the combined pressure of a heavy civil list and commercial urgency" and must balance a fine line between efficiency and the appearance of summary justice.  JA-101.  Regardless of whether the Defendants argue it, it is relevant and the court abused its discretion in failing to adhere to its to consider the pressure on the  BVI courts from congestion. It would weight against dismissal.

5.    Application of Foreign Law"

 The district court erroneously refused to analyze or consider this crucial factor.  The court simply stated it is "uncertain" whether U.S. law was applicable. Nevertheless, the court, apparently and erroneously, attributed some unknown amount

46

of weight to it.  The court stated that it "refrains from attributing **much weight** to this particular factor because of the uncertainty surrounding it at this time."  (JA- 23) (emphasis added).  Assigning any weight to this factor with  considering the applicability of U.S. law is clearly abuse of discretion.

The court erroneously determined that there was no need to attempt any choice of law analysis based on a statements from ,*Piper* at 263 (quoting *Gilbert at 509)*, for the proposition that the courts should "avoid becoming entangled in complicated choice of law analysis" and "complex exercises in comparative law." (JA - 23) However, the passages quoted by the district court are taken out of context.  It is clear that the Supreme Court did not intend for courts to avoid determining whether U.S. law is applicable to the case.

Obviously, the Court did not intend to imply that it is too complex for a U.S. federal court to determine applicability of  federal maritime law..  After all, the essential purpose and mission of the federal court system is to adjudicate cases arising under U.S. law.  In *Neely* this Court noted that the Supreme Court in *Laurtitzen,* extolled the long standing expertise of U.S. federal courts in maritime choice of law principles as "courts long accustomed to dealing with...reconciling our own [law] with foreign interests" *Neely* at 181 (quoting *Laurtizen* at 577).

If one carefully reads the quoted passage and places it in context, it becomes

clear that, in *Piper,* the Court is stating that courts need not engage in a complex comparative law favorability analysis between U.S. law and the intricacies of foreign law.  As Justice Nygaard stated, "The reason for the rule is clear; inquiring into the specifics of foreign law could quickly become mind-numbingly complex....'The courts would frequently be required to interpret the law of foreign jurisdictions....The trial court would ...have to compare the rights, remedies, and procedures available under the law that would be applied in each forum.'" *Lacey II* at 196 (dissent) (quoting *Piper* at 251).

The *Gilbert* sentence quoted in the *Piper* excerpt, when read in context, clearly refers to the difficulty of applying unfamiliar foreign law.  *See Gilbert* at 509 ("There is an appropriateness, too in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflicts of laws, and in law foreign to itself.").

The court must, however, analyze the applicability U.S. law.  *Lacey II* at 187. Failure to do so is clearly error.  *Lony I* at 643.  The fact that Plaintiff has asserted claims under the law of her home forum weighs in favor of retaining jurisdiction.  *Id.* Dismissing a case in order to avoid analyzing the applicability of U.S. law is clearly abuse of discretion.

6.    Jury Duty:

48

The court found that the only connection between this matter and the "community of St. Thomas" is that Plaintiff boarded the vessel there and that connection "is tenuous at best." JA - 24. The court then concluded that "[i]t seems uniquely burdensome to require a jury in the United States Virgin Islands to consider foreign evidence and possibly apply foreign law.  Thus, this Court finds that this factor counsels in favor of dismissal."

This finding is clearly erroneous and constitutes abuse of discretion on several grounds.  First of all, the "forum" at issue is Plaintiff's home forum, the United States, not a particular district.  Therefore it was error for the court to focus on connections with a particular district, and, even more so, to focus on just one community within the district..  Plaintiffs causes of action all arise under U.S. federal law, not the territorial laws of the Virgin Islands.   Every U.S. citizen has an interest in the enforcement of U.S. laws.      [E]ach nation has a legitimate interest that its ...inhabitants not be maimed or disabled from self-support" *Neely v. Club Med Mgmt Services, Inc.,* 63 F.2d 166, 196 (3d Cir. 1995) ( en banc) (quoting *Lauritzen,* 345 U.S. at 586 (citations omitted)).

The court also failed to consider additional connections.  Defendants solicit American employees, including Plaintiff  through, a charter management company in the United States, Churchill Yachts, who also sells charters for Defendants.   JA-

49

140 ¶2, 141-42 ¶10.    Defendants also solicit business in the U.S.  JA-148-60. Solicitation of Americans for employment and as charter customers implicates interests of the United States.  *Neely* at 194.  Plaintiffs injuries, incurred while working as a chef were directly related to Defendant's American tourism operations. "The United States has a great interest in assuring adequate protection for the life and health of Americans who are solicited in the United States to vacation or work ...[at] foreign spots."  *Neely* at 195.

The court also overlooked the facts that Defendants specifically arranged for Plaintiff to begin and end the voyage in St. Thomas. JA-142 ¶12. Charter guests on this very charter also boarded and disembarked in St. Thomas. JA-143 ¶22.  The vessel spends significant time in St. Thomas, evidenced by the fact that Defendants have "preferred providers" for the yacht in St. Thomas, as well as, Puerto Rico.  JA-141.  Virgin Islanders have an interest in foreign vessels competing with local charter operators within the territory.  In addition, Virgin Islanders have an interest in regulating foreign vessels that anchor offshore to engage in activities that are so disruptive and annoying  that they are banned in the vessel's homeland, such as jet skiing.

The court did not explain, and it is difficult to discern, what would be "uniquely burdensome" about requiring the jury to consider "foreign evidence."  The

50

only evidence ever mentioned as being in the BVI was a record of Plaintiff's emergency room visit and the speculative and irrelevant testimony of BVI residents. Finding a jury would be burdened by applying foreign, without making any choice of law analysis, or stating any reasonable basis, is clear abuse of discretion, particularly when coupled with failure to consider relevant facts.

In seeking dismissal on forum non conveniens grounds, a defendant must show that the balance of the public and private factors "tips decidedly in favor of trial in the foreign forum." *Lacey v. Cessna Aircraft Co. (Lacey II),* 932 F.2d 170, 180 (3d Cir. 1991) "If when added together, the relevant private and public interest factors are in equipoise, or even if they lean slightly toward dismissal, the motion to dismiss must be denied." *Id.* When properly considered and weighed, the balance of the private and public interest factors as a whole weigh against dismissal and to find otherwise was clearly erroneous. Plaintiff's choice of forum clearly will not cause oppressiveness and vexation to Defendants out of all proportion to Plaintiff's convenience.

V.     THE DISTRICT COURT ERRED IN FAILING TO HOLD DEFENDANTS TO THEIR BURDEN TO PROVIDE SUFFICIENT AND ACCURATE INFORMATION TO PROPERLY BALANCE THE

FACTORS AND IN FAILING TO ACCESS THE FACTORS AT THE TIME OF RULING ON THE MOTION.

Standard of Review:

"Defendant bears the burden of persuasion at each stage in the analysis [of forum non conveniens], and a district court abuses its discretion if it fails to hold the defendant to its burden." *Delta Airlines, Inc. V. Chimet, S.P.A.,* 619 F.3d 288, 295 (3d Cir. 2010). It is abuse of discretion and reversible error for the district court to dismiss for forum non conveniens if defendants did not meet their burden to submit adequate information to support their motion or if the court did not adequately consider the factors. *Lacey v. Cessna Aircraft Co.,("Lacey I")* 886 f.2d 628, 39 (3d Cir. 1989).

The court made its ruling without requiring Defendants to clarify discrepancies in the information it provided, even though Plaintiff alerted the court and provided information that cast doubt on statements provided by Defendants' supporting affidavits. JA - 145-160. In addition, shortly after briefing concluded but before the court issued its decision, changed circumstances eliminated virtually all the court's basis for dismissal. A full year passed between the time Defendants filed their motion on March 6, 2015 and the time the court issued its ruling on March 30, 2016.

Defendant has the burden to provide sufficient information to allow the court

52

to make a complete analysis of the determinative factors.  *E.g., Lony I* at 632, *Lacey I* at 43.  In addition, parties have an obligation to advise the court of relevant changed circumstances that occur prior to the court's ruling, particularly when the circumstances concern a factor that the offering party has asked the court to rely on.  *See, e.g., Lacey II* at n.3 (district court was aware of related action pending elsewhere and defendant "would have been remiss had it not apprised the court" of the dismissal of that action prior to its ruling on defendant's forum non conveniens motion).

The court should be particularly vigilant about holding defendant to its obligation to provide sufficient and  accurate information, especially what is in defendant's hands.  When, as here, Defendants' first appearance was the filing of a forum non conveniens motion, Plaintiff must rely on Defendants to fulfill the obligation to come forward with all relevant information within Defendants' knowledge and possession and that is unavailable to Plaintiff, who is subject to the moratorium on discovery pursuant to FRCP 26(d).  Fairness mandates that an opposing party be allowed to contradict matters placed in issue by the other party.  *E.g., Jones v. Southern Pac R.R.* 962 F.2d 447, 450 (5th Cir. 1992); *United States v. Magallanez,* 408 F.3d 672, 680-81 (10th Cir. 2005) (defendant may not make false statements on direct and then rely on opposing party's inability to challenge them).  This Court stated in *Lony II,* 935 F.2d 604 (3d Cir. 1989), that *Piper* "contemplated"

"limited discovery before the disposition of a fourm non conveniens motion." *Id.* at 614.

Defendants submitted a declaration of Captain Calot, the captain of Olga which stated the vessel "does not operate any charters out of or into St. Thomas." .   In addition to Plaintiff's own declaration that the charter for which she was employed disembarked one group charter guests in St. Thomas and boarded a new a new group there Plaintiff provided, and requested judicial notice of, multi-page brochures (JA-145-160)   from multiple   booking agencies describing M/Y Olga, providing photographs of the vessel and  stating that the vessel is available for charter in St. Thomas. JA- 150, 157.

The court ignored the red flags and Plaintiff's corroborating observations and made a contrary finding that the only connection to St. Thomas was the fact that Plaintiff began her voyage there.   Once the court was on notice of a question regarding the accuracy of "facts" it intended to rely on it should have asked for clarification rather than simply ignoring the conflicting information.

 In a similar situation, the court in *La Seguridad v. Transytur Line,* 707 F.2d 1304 (11th Cir. 1983), criticized the district court  because it failed to "go beyond the representations of counsel to ascertain the underlying facts" or "attempt to pin counsel down" regarding the facts" supporting their argument. *Id.* at 1306.    T h e

court did not ask Defendant to clarify, submit supplemental briefing or lift the stay on discovery so Plaintiff could provide more detail in a traditional evidentiary format, as other courts often do.  *E.g., Lony I* at 631. It was an abuse of discretion for the court to base its ruling on facts that were questionable and use those "facts" to support its findings favoring dismissal.

In addition, it has come to Plaintiff's attention that, prior to Plaintiff's accident, Olga was prominently featured conducting a charter from St. Thomas when she was chartered for episodes of The Real Housewives of New York television show, season 3, episodes 11 and 12..  The Housewives are shown boarding Olga at Yacht Haven Grande on St. Thomas, frolicking and partying on  Olga while in the marina and cruising the surrounding waters of the USVI.  The St. Thomas locations on the show are easily recognizable to St. Thomians.  Even Captain Calot, himself, is seen on the vessel with the Housewives.  However, neither Captain Calot nor Defendants disclosed this contradictory information regarding their significant activities and commercial pursuits on St. Thomas.

During the year, that the motion was pending, Defendants sold the vessel. Unbeknownst to the court and Plaintiff, Defendants had the vessel listed for sale with U.S. brokers before and during the pendency of the motion, yet the Defendants failed to disclose that information.  In addition, while the motion was pending, Captain

Calot became a U.S. resident, residing in Ft. Lauderdale. [7]

The court found that vessel's BVI ownership "counsels in favor of dismissal".

The court's reliance on Captain Calot's affidavit that he "resides in Canada"was used to support the court's findings that the evidence factor "strongly favors" dismissal. JA-   As of the time the court dismissed Plaintiff's case, the vessel's former registration and alleged location in the BVI, had become completely irrelevant to a convenience analysis and no longer implicated any BVI interests, if it ever did. Likewise, the court erroneously dismissed the case when Captain Calot's residency in the United States provides strong support against dismissal.  The long delay in issuing the ruling significantly affected the balance of factors and the court erred in issuing its delayed ruling without considering the likelihood of changed circumstances affecting the balance of conveniences.

---

[7]

Plaintiff is concurrently filing a motion requesting that this Court take judicial notice of Capt. Calot's facebook page, his Linked-In page and a Boat International magazine article dated July 2, 2015 about the sale of Olga, identifying the listing agent and the buyer's agent and listing information from the initial listing on August 9, 2013 when she was listed for $7,900.000.  Plaintiff's motion also includes articles from Boat International and SuperYachtNews.com detailing seven subsequent price reductions from August 2013 through June 8, 2015.  Plaintiff also asks the Court to take judicial notice of the Bravo TV episodes of the Real Housewives of New York. If the court does not accept this evidence for judicial notice, Plaintiff asks this Court to consider the documents as an offer of proof of some of the evidence that  Plaintiff can present by traditional means upon remand if given the opportunity for limited discovery. )

In a forum non conveniens analysis, the determinative factors, "including the convenience, availability and adequacy elements" as to whether the case should be dismissed are to be determined as of the *time of the dismissal*, rather than at an earlier stage of the proceeding. *Veba-Chemie A.G. v M/V Getafix,* 711 F.2d 1243, 1248 (5th Cir. 1983); *accord Windt v.Qwest Comm'n Int'l Inc.,* 529 F.3d 183, 196 (3d Cir. 2008). The court's failure to take into account the likelihood of changed circumstances during the long delay clearly erroneous and has resulted in great injustice to Plaintiff.

Moreover, as the court recognized in *Cotemar S.A. De C.V. v. Hornbeck Offshore Sevrs, L.L.C.,* No. 13-20230 (5th Cir. May 21, 2014) "supervening changes of circumstances must be taken into account even where they materialize during the pendency of an appeal: "[A]n appellate court is obligated to take notice of changes in fact or law occurring during the pendency of a case on appeal which would make a lower court's decision, though perhaps correct at the time of its entry, operate to deny litigants substantial justice....[T]he preferred procedure is to remand to give the district court an opportunity to pass on the changed circumstances." *Id. at 9* (quoting *Concerned Citizens of Vicksburg v. Sills,* 567 F.2d 646, 649-50 (5th Cir 1978).

It was foreseeable that circumstances affecting the relative conveniences may have changed during the year-long delay in issuing a ruling and the court should have

asked for supplemental briefing or at least allowed oral argument. The purpose of forum non conveniens is to see that the case is *tried* in the more convenient forum. Dismissing the case at a time when the alternative forum no longer offers any convenience violates the purpose of the doctrine. Had the court properly considered the factors at or near the time of its decision, the factors would overwhelmingly balanced against dismissal.

The Defendants assert that it will be necessary to call witnesses from Pebbles Hospital in Tortola regarding the record of Plaintiff's emergency room visit immediately following the accident. Defendants offer no explanation why records of Plaintiff's emergency room visit would not be introduced and relied upon in the, normal course, by Plaintiff's treating physicians and Defendants' medical experts. Emergency room personnel are generally not called to testify in a matter such as this one. The court did not hold Defendants to their burden of providing a reasonable explanation as to why this information could not be admitted at trial in the Virgin Islands. Yet, the court relied on the unavailability of this evidence in the U.S .as a basis to support its clearly erroneous conclusion.

The court also erred in failing to hold Defendants to their burden of establishing any factual basis to support their completely unfounded and speculative assertion that Captain Calot "believes" there may be employees of Scrub Island

58

Resort with knowledge of "this alleged incident." He asserted no personal knowledge or other reasonable basis for such a belief. Defendants did not identify the witnesses, state what type of "knowledge" they could have or any reason to believe such witnesses might exist or that their testimony would be relevant. The competent evidence before the court establishes that there were no witnesses to the accident.

The court failed to recognize the fact that records from Pebbles Hospital are part of Plaintiff's treatment records that will easily be available and admissible in district court. The court, nevertheless, relied on Defendants' baseless assertions to find that the witness and evidence factor "strongly favors dismissal. The court's reliance on completely unsupported assertions is not reasonable and is clearly an abuse of discretion. *See La Seguridad* at 1308 (district court's order of dismissal vacated because it is "impossible to make a sound determination of relative convenience" on a "fragmentary record.")

## VI.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this Court reverse the order of the district court granting the motion to dismiss and remand the case for discovery and trial on the merits. In the alternative, Plaintiff requests this Court to reverse the district court's ruling and remand to the District Court with instructions

to permit discovery on the issues relevant to a forum non conveniens determination so that the district court may properly assess the adequacy of the alternate forum and properly balance the private and public factors.

Dated: September 1, 2016    **LAW OFFICES OF FRIEDBERG & BUNGE**

By:  *s/ THOMAS F. FRIEDBERG, ESQ.*
THOMAS F. FRIEDBERG, ESQ. (V1#1006)
Attorneys for Plaintiff/Appellant,
Michelle Trotter

## CERTIFICATE OF BAR MEMBERSHIP

Pursuant to L.A.R. 28.3(d), I hereby certify that I am a member of the Bar of the United States Court of Appeals for the Third Circuit.

## CERTIFICATE OF WORD COUNT

Pursuant to L.A.R. 32(a) and 1112.9, I hereby certify that this brief complies with the type-volume limitation of Fed.R.App.P. 32(a) because the brief contains 13957 words, excluding the parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because this brief has been prepared using a proportionally spaced typeface using a Corel WordPerfect word-processing program to generate the brief.  The entire brief is double spaced. The font is 14 point Times New Roman.

## CERTIFICATE REGARDING ELECTRONIC FILING

Pursuant to L.A.R. 31.1( c), I hereby certify that an electronic version of this brief, in PDF format, was filed; that the text of the electronic version identical to the text in the paper copies and that a McAfee Anti-Virus Protection program was run on the PDF version and no virus was detected.

Dated: September 1, 2016          **LAW OFFICES OF FRIEDBERG & BUNGE**

By:   *s/ THOMAS F. FRIEDBERG, ESQ.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and exact copy of the foregoing

**PLAINTIFF-APPELLANT'S OPENING BRIEF** was served on September 1,

2016, by causing this document to be served through the Court's Electronic Case

Filing System to the following parties and counsel:

JENNIFER Q. MILLER, ESQ. (VI#1109)
KELLY CHARLES-COLLINS, ESQ.
MICHAEL J. DONO, ESQ.
**HAMILTON, MILLER & BIRTHISEL, LLP**
50 Southeast Second Avenue, Suite 1200
Miami, Florida 33131
TEL : (305) 379-3686
FAX: (305) 379-3690
 "jmiller@hamiltonmillerlaw.com"
"kcharlescollins@hamiltonmillerlaw.com"
"mdono@hamiltonnillerlaw.com"


                                        *s/THOMAS F. FRIEDBERG, ESQ.*
                                        Attorneys for Plaintiff/Appellant,
                                        MICHELLE TROTTER