**Case No. 16-1967**

———————————

## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

——————————

MICHELLE TROTTER,
Plaintiff-Appellant,

v.

7R HOLDINGS, LLC, LUIS A. RUBI GONZALEZ, M/Y OLGA
Defendants-Respondents

———————————————

Appeal from United States District Court of the Virgin Islands, St. Thomas
Civil Case No. 3:14-cv-0099 CVG RM
(Honorable Curtis V. Gomez)

———————————————

**PLAINTIFF-APPELLANT'S MOTION  REQUESTING JUDICIAL
NOTICE IN SUPPORT OF APPEAL**

———————————————

Thomas F. Friedberg, Esq. (VI Bar No. 1006)
**LAW OFFICES OF FRIEDBERG & BUNGE**
610 West Ash Street, Suite 1400
P.O. Box 6814
San Diego, CA 92166-0814
Telephone: (619) 557-0101
Attorneys for Plaintiff and Appellant,
MICHELLE TROTTER

In accordance with Federal Rule of Appellate Procedure 27 and Federal Rule of Evidence 201, Plaintiff and Appellant Michelle Trotter, hereby requests the Court take judicial notice of the following:

1.  The Distance between St. Thomas, U.S. Virgin Islands ("VI") and Tortola, British Virgin Islands ("BVI") is 18.33 miles. DISTANCE FROM TO, http://www.distancefromto.net/betweenSt+Thomas/Tortola/ (last visited August 20, 2016). A true and correct copy of the webpage is attached hereto as Exhibit "1."

2.  Non-stop flights from Miami to St. Thomas, VI take approximately 2 hours and 43 minutes to 2 hours and 50 minutes and cost $466.00, round trip (randomly chosen dates outbound December 15, 2016 and return December 18, 2016). Flights from Fort Lauderdale to St. Thomas are available for only $174.00 round trip. GOOGLE FLIGHTS, https://www.google.com/flights#search;f= MIA;t-STT;d=2016-12-15;r=2016-12-18 (last visited August 20, 2016). A true and correct copy of the webpage is attached hereto as Exhibit "2."

3.  There are no non-stop flights from Miami to Tortola, BVI. The duration of flights with one stop runs from four hours and fifteen minutes to eighteen hours and thirty-three minutes at a cost ranging from $580.00 to $802.00 round trip, with the average being $725.89. (randomly chosen dates outbound December 15, 2016 and return December 18, 2016). GOOGLE FLIGHTS,

https://www.google.com/flights#search;f=MIA;t-EIS;d=2016-12-15;r=2016-12-18 (last visited August 20, 2016).  A true and correct copy of the webpage is attached hereto as Exhibit "3."

4.    Non-stop flights from San Juan, Puerto Rico to St. Thomas, VI take from thirty-five to forty minutes and the cost ranges from $123.00 to $241.00 round trip, with the average being $194.82.  (randomly chosen dates outbound December 15, 2016 and return December 18, 2016)    GOOGLE FLIGHTS, https://www.google.com/flights#search;f=SJU;t-STT;d=2016-12-15;r=2016-12-18 (last visited August 20, 2016).  A true and correct copy of the webpage is attached hereto as Exhibit "4."

5.    Non-stop flights from San Juan, Puerto Rico to Tortola, BVI take from thirty-five to fifty-five minutes and the cost ranges from $212.00 to $478.00, with average being $414.33.  (randomly chosen dates outbound December 15, 2016 and return December 18, 2016).    GOOGLE FLIGHTS, https://www.google.com/flights#search;f=SJU;t-EIS;d=2016-12-15;r=2016-12-18 (last visited August 20, 2016).  A true and correct copy of the webpage is attached hereto as Exhibit "5. "

6.    Facebook profile of Bernard Calot, M/Y OLGA's captain at the time of the incident, wherein he states both his "current city" and "hometown" are Fort Lauderdale, Florida, where he is currently employed as Sales and Marketing

Manager at Universal Marine Center. FACEBOOK, https://www.facebook.com/Bearnard.Calot. (Last visited September 17, 2016). A true and correct copy of the webpage is attached hereto as Exhibit "6."

7. LinkedIn profile of Bernard Calot stating he is currently employed as Marketing Manager at Universal Marine Center in Winter Haven Florida and was previously employed as Captain of M/Y OLGA from September 2006 to May 2015. LINKEDIN, https://www.linkedin.com/in/bernard-calot-0346a1106. (Last visited April 29, 2016). A true and correct copy of the webpage is attached hereto as Exhibit "7."

8. OLGA was sold between the time the Motion to Dismiss was filed on March 6, 2015 and the date the court ordered the dismissal of Plaintiff's the case on March 30, 2016. An article from Boat International Magazine's internet site dated July 2, 2015 states the M/Y OLGA has been sold. OLGA was listed for sale by Thom Conboy at Ocean Independence, a Florida yacht broker and the buyer was introduced by Jim McConville at Allied Marine, a Florida yacht broker. Malcolm Maclean, *Crescent Custom superyacht Olga sold,* BOAT INTERNATIONAL (July 2, 2015), http://www.boatinternational.com/yacht-market-intelligence/brokerage-sales-news/crescent-custom-superyacht-olga-sold-26785 (last visited August 18, 2016). A true and correct copy of the webpage is attached hereto as Exhibit "8."

9.    M/Y OLGA was listed for sale with a Florida yacht broker for more than a year-and-a-half before Defendants filed their Motion to Dismiss for Forum *Non Conveniens*, claiming that the United States is an extremely inconvenient forum.  An article from Boat International Magazine's  internet site dated August 9, 2013 and an article from List.ify.Me, This Week in Superyacht Brokerage,  dated August 12, 2013 state that Thom Conboy of BYS has the listing for OLGA.  She is listed for sale for $7,900,000 and will be available for viewing during the Fort Lauderdale International Boat Show.  Caroline, *Superyacht Olga is Now for Sale with BYS,* BOAT INTERNATIONAL (August 9, 2013), http://www.boatinternational.com/yacht-market-intelligence/brokerage-sales-news/superyacht-olga-is-now-for-sale-with-burger-yacht-sale-17233 (Last visited April 30, 2016); Rebecca Curran, *This Week in Superyacht Brokerage: Sales increase to three completed* (August 12, 2013), http://list.ify.me/2013/08/12/this-week-in-superyacht-brokerage-sales-increase-to-three-completed (last visited August 20, 2016).  True and correct copies of the webpages are attached hereto as Exhibit "9."

10.    On November 25, 2013, SuperyachtNews reported that Thom Conboy of BYS, a Florida yacht broker, has reduced the sale price of OLGA to $7,650,000. Rebecca Taylor, *"Market gaining strength but still fragile" says Michael White of Ocean Independence,* SUPERYACHTNEWS.COM (November 25, 2013),

http://www.superyachtnews.com/fleet/20559/market-gaining-strength-but-st

ill-fragile-says-michael-white-of-ocean-independence.html. (last visited April

30, 2016).   A true and correct copy of the webpage is attached hereto as

Exhibit "10."

11.     SuperyachtNews.com reported on January 6, 2014 that Thom Conboy of BYS,

a Florida yacht broker, reduced the sale price of M/Y OLGA to $7,450,000.

Rebecca Taylor, *2013 closes on a high with 16 sales over the holidays,*

S U P E R Y A C H T N E W S . C O M    ( J a n u a r y    6 ,    2 0 1 4 )

http://www.superyachtnews.com/fleet/20695/brokerage-reduction-new-listi

ng-sales.html (last viewed April 30, 2016). A true and correct copy of the

webpage is attached hereto as Exhibit "11."

12.    On September 1, 2014 SuperyachtNews.com reported that Thom Conboy of

BYS, a Florida yacht broker, reduced the sale price of OLGA to  $6,900,000.

Rebecca Taylor, *"Resale very strong for realistically priced yachts" says

Kevin Bonnie of IYC,* SUPERYACHTNEWS.COM (September 1, 2014),

http://www.superyachtnews.com/fleet/21915/superyachts-brokerage-sales-n

ew-listings-reductions.html (last visited April 30, 2016).  A true and correct

copy of the webpage is attached hereto as Exhibit "12."

13.    Boat International Magazine reported on October 30, 2014 that BYS, a Florida

yacht broker reduced the sale price on OLGA by another  $405,000 from

$6,900,000 to $6,495,000. The article further notes that OLGA is available for charter. Malcolm MacLean, *Buy before the end of the year: Five yachts seriously for sale,* BOAT INTERNATIONAL (October 30, 2104), http://www.boatinternational.com/yachts/editorial-features/buy-before-the-end-of-the-year-five-yachts-seriously-for-sale–2005 (last visited June 23, 2016). A true and correct copy of the webpage is attached hereto as Exhibit "13."

14. On May 5, 2015, SuperyachtNews reported that Thom Conboy at Ocean Independence announced a price reduction on M/Y OLGA to $6,195,000, Rebecca Taylor, *A quintet of sales for Ocean Independence,* SUPERYACHTNEWS.COM (May 5, 2015) http://www.superyachtnews.com /fleet/22997/superyachts-brokerage-market-sales-transactions-listings.html (last visited April 30, 2016). A true and correct copy of the webpage is attached hereto as Exhibit "14."

15. A June 8, 2015 Boat International Magazine article states that OLGA's sale price has been reduced a fourth time since August of 2014 in the amount of $200,000. Malcolm MacLean, *Further price drop on Crescent superyacht Olga,* BOAT INTERNATIONAL (June 8, 2015) http://www.boatinternational.com /yacht-market-intelligence/brokerage-sale-news/another-price-drop-on-crescent-superyacht-olga-at-bys-22055 (last visited August 30, 2016). A true and correct copy of the webpage is attached hereto as Exhibit "15."

16.    On April 19, 2011, Ocean Getaways announced a summer charter special for

OLGA for charters in the U.S. Virgin Islands or the BVI between May 15 and

September 1, 2011.  The all-inclusive special price is $69,900 for seven nights

or $55,000 for five nights and includes fuel, food, soft drinks, ship's bar and

selective dockage, which is a 30% savings over the regular price.  Specialty

items, premium wines and spirits, taxes and crew gratuity are extra. *Caribbean*

*Mega Yacht Charter Special Plus Mariachi Singer,* OCEAN GETAWAYS (April

19, 2011), http://www.oceangetaways.com/blog/198/ (last visited April 29,

2016) .  A true and correct copy of the webpage is attached hereto as Exhibit

"16."

17.    On October 18, 2011 Yacht Charter News and Boating Blog reported  on a

charter brokerage inspection tour of OLGA for purposes of promoting charter

bookings.   The article describes the vessel and its amenities, provides

numerous photos of the vessel and extolls the virtues of the vessel for potential

charter passengers.  The article reports on the talents and services provided by

the various crewmembers and  reports that OLGA's chef and chief stew were

busily preparing and serving delicious appetizers to the touring brokers.  The

webpage provides a link to charter OLGA.  The article notes that OLGA will

be available for viewing by prospective charterers at the Fort Lauderdale

International Boat Show.  At the show, the vessel will be located on the Face

Dock at the Hall of Fame Marina. *Our Charter Experts On Board 121ft. OLGA : A Super Yacht with a Mission to Spoil! See OLGA at the Fort Lauderdale International Boat Show, October 27-31,* YACHT CHARTER NEWS AND BOATING BLOG (October 8, 2011), http://boatbookings.com/blog /2011/10/18/our-charter-experts-on-board-121ft-olga-a-super-yacht-with-a-mission-to-spoil-see-olga-at-the-fort-lauderdale-international-boat-show-october-27-31/ (last visited September 16, 2016). A true and correct copy of the webpage is attached hereto as Exhibit "17."

18.   M/Y OLGA was displayed at the 2014 Fort Lauderdale International Boat Show, the 55th annual show, from October 30 to November 3, 2014 and the captain and crew were available for interviews. Churchill Yachts reported that if she does not sell at the show, OLGA will be among those that they will offer for charter in Florida, the Bahamas and the Caribbean after the show. Churchill Yachts had brochures for OLGA available for download at that time. CHURCHILL YACHTS, http://churchillyachts.com/55th-annual-fort-lauderdale-boat-show-october-30-November-3 (last viewed September 16, 2016). A true and correct copy of the webpage is attached hereto as Exhibit "18."

19.   Kim Kavin, an award winning writer, editor and author of ten books, including Dream Cruises: The Insider's Guide to Private Yacht Vacations, reported on November 22, 2010 that a couple of weeks earlier, she was aboard OLGA at

the 2010 Fort Lauderdale International Boat Show, where she interviewed Captain Bernard Calot "about all that OLGA offers charter guests, including multiple trained masseuses onboard." She notes that the charter management company, Churchill Yacht Partners, states that OLGA is still available for Christmas charters in the Bahamas. Kim Kavin, *It's Not Too Late to Book a Christmas Charter,* YACHTWORLD CHARTERS (November 22, 2010), http://features.yachtworldcharters.com/2010/11/its-not-too-late-to-book-a-christmas-charter/ (last visited September 16, 2016). A true and correct copy of the webpage is attached hereto as Exhibit "19."

20.     Charterwave, an on-line yacht vacation magazine, in an article entitled "10 Best Charter Yachts to See at the 2011 Fort Lauderdale International Boat Show," noted that Churchill Yacht Partners, a Florida charter management company, will have OLGA on display at the 2011 Fort Lauderdale International Boat Show and noted that OLGA is popular among charterers "thanks to her can-do captain and onboard massage treatments." *10 Best Charter Yachts to See at the 2011 Fort Lauderdale International Boat Show,* CHARTERWAVE, http://www.charterwave.com/news-a-info-/10-best-archive/4012-10-best-charter-yachts-to-see-at-the-2011-fort-lauderdale-international-boat-show.html (last visited September 16, 2016). . A true and correct copy of the webpage is attached hereto as Exhibit "20."

9

21.   The 2013 Fort Lauderdale International Boat Show website indicates that
      OLGA was on display at the show for viewing by potential buyers  and was
      registered as event exhibitor listing 2432. *Crescent Raised Pilothouse 121 feet*
      *OLGA,* FORT LAUDERDALE INTERNATIONAL BOAT SHOW 2013,
      http:showmanagement.com/fort-lauderdale-international-boat-show-
      2013/event/boat. listing/15006?from search=yes (last visited September 16,
      2016).  A true and correct copy of the webpage is attached hereto as Exhibit
      "21."

22.   On November 12, 2014, Yacht Charter Fleet reported that OLGA has charter
      availability "following a successful appearance at the [2014] Fort Lauderdale
      International Boat show."  *Superyacht OLGA Available in the Bahamas,*
      YACHT CHARTER FLEET (November 12, 2014), https://yachtcharterfleet.com
      /news/superyacht-olga-available-for-charter-in-the-bahamas-3397.htm  (last
      visited September 16, 2016). .  A true and correct copy of the webpage is
      attached hereto as Exhibit "22."

23.   Bravo TV chartered M/Y OLGA for a cruise beginning in  St. Thomas, VI and
      ending in St. John, VI for Season Three of The Real Housewives  of New
      York.  In episode eleven, entitled "Housewives Overboard", the "Housewives"
      are shown arriving at the airport in St. Thomas and boarding OLGA at Yacht
      Haven Grande marina on St. Thomas, where they are personally greeted on the

dock by Captain Bernard Calot and the other crew members of OLGA.  The

"Housewives" are shown partying and bickering on and around OLGA while

she is docked at Yacht Haven Grande in St. Thomas and being served aboard

yacht by Captain Calot, himself.  OLGA is also shown cruising the waters

surrounding St. Thomas and St. John with the "Housewives" aboard. *The Real*

*Housewives of New York: Housewives Overboard* (BRAVO television, season

3, episode 11,  broadcast May 13, 2010) (available on HULU PLUS, AMAZON

VIDEO, ITUNES, GOOGLE PLAY, VUDU , ON DEMAND with cable providers and

other sources).

OLGA was also prominently featured cruising U.S. waters in episode

twelve, entitled "Sun, Sand and Psychosis."  In episode twelve the

"Housewives" are seen dining and arguing aboard OLGA while cruising

between St. Thomas and St. John.  The charter ends in St. John, where the

"Housewives" are seen disembarking and being taken ashore in OLGA's

dinghy by OLGA's crew. *The Real Housewives of New York: Sun, Sand and*

*Psychosis* (BRAVO television, season 3, episode 12,  broadcast May 20, 2010)

(available on HULU PLUS, AMAZON VIDEO, ITUNES, GOOGLE PLAY, VUDU , ON

DEMAND with cable providers and other sources).

## DISCUSSION

Federal Rule of Evidence 201 authorizes a court to take judicial notice of an

adjudicative fact if that fact is not subject to reasonable dispute. Judicial notice may

be taken at any stage of the proceeding, including on appeal as long as it is not unfair

to a party to do so and does not undermine the trial court's fact-finding authority. *In*

*re Indian Palms Associates, Ltd.* 61 F.3d 197, 205 (3d Cir. 1995). (See also *U.S. v.*

*Carr* 25 F.3d 1194, footnote 3 (3d Cir. 1994) holding judicial notice of an

adjudicative fact may be taken by an appellate court pursuant to Federal Rule of

Evidence 201 so long as the fact is not subject to reasonable dispute in that it is either

generally known within the territorial jurisdiction of the trial court or capable of

accurate and ready determination by resort to sources whose accuracy cannot

reasonably be questioned.).

In this case, there is no unfairness to Defendants because all of the facts for

which Plaintiff seeks judicial notice are personally known by Defendants but were not

disclosed to Plaintiff or the District Court.  These facts directly bear on the issue of

Defendants' convenience in Plaintiff's chosen forum.

Judicial notice can be used to introduce material evidence on appeal that was

not submitted to the trial court. *United States v. Pogazi* 999 F.2d 719, 731 (3d Cir.

1993).   It can also be used to supplement the record with post judgment

developments. In *Ieradi v. Mylan Laboratories, Inc.* 230 F.3d 594, 597 (footnote 2)

(3d Cir. 2000), the court took judicial notice of a newspaper article to show the fact

that the defendant had entered into a settlement with the Federal Trade Commission

while the underlying case was on appeal.

The Third Circuit has repeatedly found newspaper articles to be appropriate subjects of judicial notice. *Ieradi v. Mylan Laboratories, Inc.* 230 F.3d 594, 597 (footnote 2) (3d Cir. 2000); *Peters v. Delaware River Port Authority of Pennsylvania and New Jersey* 16 F. 3d 1346 (3d Cir. 1994). It follows then that informational articles obtained from internet news sources are properly subject to judicial notice, as well. Although the Third Circuit treats information obtained from the internet with caution, doubts about a document's authenticity can be alleviated through proper authentication of the documents pursuant to Federal Rules of Evidence. *Victaulic Co. v. Tieman* 499 F. 3d 227, 236 (3rd Cir. 2007). All of the sources cited herein are properly authenticated. However, the Court may also consider this information as an offer of proof, as Plaintiff could easily present these facts by traditional evidentiary means on remand, if limited discovery is ordered.

Exhibits one through five, the distances, flight durations and relative airfares are proper facts for judicial notice because they are generally known within the community and also can be accurately and readily determined from accurate sources. See Fed. R. Evid. 201(b)(1), 201(B)(2).

Exhibits six and seven, Captain Bernard Calot's Facebook and LinkedIn pages, are web pages that are maintained by Captain Calot, Defendants' primary witness, and the facts of his current residence and employment in the Unites States

can be readily and accurately determined from numerous other reliable sources, including Captain Calot, himself. They are, therefore, subject to judicial notice. See Fed. R. Evid. 201(b)(1), 201(B)(2). The District Court dismissed Plaintiff's case, in part, on the erroneous assumption that Captain Calot is not resident in the United States and, therefore, is not subject to subpoena. However, by the time the case was dismissed, Captain Calot had become a United States resident.

Exhibits eight to fifteen and exhibit twenty are internet pages from news periodicals serving the yachting community. These magazine articles report yacht brokerage news, including new listings, price reductions and yacht sales for brokerages in the United States. Newspapers and periodicals are self-authenticating pursuant to Federal Rule of Evidence 902(6), and, therefore, may be judicially noticed. Exhibits eight, nine, thirteen and fifteen are from Boat International Magazine, which is a print magazine, available for subscription, that also publishes electronically on the internet. Exhibits ten, eleven, twelve and fourteen are from Super Yacht News, which is a print magazine whose journalism caters to the superyacht market and also provides news electronically on the internet, as well as, breaking news via an app, by subscription.

The Boat International and Superyacht News articles establish that OLGA was listed for sale with a yacht broker in the United States for more than a year-and-a-half *before* Defendants filed their Motion to Dismiss for Forum *Non Conveniens* and was

14

continuously listed for sale in the United States for the duration of briefing on the motion and until it sold, in the United States, four months after the U.S. resident Defendants' filed their motion claiming the United States is outrageously inconvenient for them. The vessel sold *nine months before* the court dismissed the case, in part, on a finding based on affidavits submitted by Defendants that the vessel was located in and was available for viewing in the BVI.

These articles reveal that Defendants were aggressively marketing OLGA for sale through their United States yacht broker with six price reductions. Defendants reduced the listing price for OLGA four times (for a total reduction of $1,505,000) *before* they filed their Motion to Dismiss for Forum *Non Conveniens*.

Less than three weeks after Defendants filed their Reply to Plaintiff's Response to Defendants' Motion to Dismiss for Forum *Non Conveniens*, they reduced the sale price of OLGA yet again by an additional $300,000 and while the motion was pending, they reduced the price another $200,000 and the vessel sold within three weeks thereafter. Unbeknownst to Plaintiff and the court, OLGA was sold with United States brokers representing buyers and sellers to an unknown buyer *nine months before* the case was dismissed.

Exhibit twenty is an article from Charterwave, an online editorial magazine that provides current information about the crewed yacht charter industry. The article chronicles the fact that OLGA's presence in Florida on display at the 2011 Fort

Lauderdale International Boat Show for inspection by potential charter guests and charter booking agencies. The article notes that Churchill Yacht Partners,(the Florida charter management company that provides crew members, including Plaintiff, for employment aboard OLGA), would be displaying and marketing the OLGA for charter at the boat show in Florida. The Court may take judicial notice because this information is easily verifiable. See Fed. R. Evid. 201(b)(2).

Exhibit seventeen is from the Yacht Charter News and Boating Blog, which provides reviews of yachts that are available for charter, based on inspections of the yachts and interviews with the crew. It also markets yacht charters to U.S. residents. The article describes the vessel in detail and provides numerous photos of the vessel and crew members. The report describes how OLGA's crew was marketing the vessel for charter by preparing and serving cuisine samples to the touring charter booking agents. The article further notes that OLGA will be on display at the 2011 Fort Lauderdale International Boat Show for viewing by prospective charterers on the Face Dock at the Hall of Fame Marina. These facts can easily be accurately determined from other reliable sources and are, therefore, properly judicially noticeable. See Fed. R. Evid. 201(b)(2).

Exhibits nine and seventeen through twenty-two establish that OLGA was in Florida on display for charter marketing and sales promotion purposes at the 2010, 2011, 2013, and 2014 annual Fort Lauderdale International Boat Shows. This is a

continual pattern of transacting business in the United States, much farther from the BVI and from Puerto Rico than St. Thomas, with no apparent inconvenience. Exhibits nine, seventeen and twenty were discussed above. This information is subject to judicial notice because it can be readily determined from accurate sources. See Fed. R. Evid. 201(b)(2).

Exhibit eighteen is from Churchill Yachts' internet site indicating that they will be displaying OLGA at the 2014 Fort Lauderdale International Boat Show and that the captain (Bernard Calot) and crew will also be available at the show for interviews by prospective charterers and booking agents. Churchill will be offering OLGA for charter after the show, assuming she does not sell at the show. Churchill is the yacht management company that arranged for Plaintiff's employment on OLGA and booked the U.S. resident charter guests for that voyage.

Exhibit nineteen is from Yachtworld Charters' website where the author reports that she was aboard OLGA at the 2010 Fort Lauderdale International Boat Show where she interviewed Captain Bernard Calot about the amenities OLGA offers charter guests. She further notes that the charter management company, Churchill Yachts, was reporting that OLGA still had Christmas charter availability.

Exhibit twenty-one is from the 2013 Fort Lauderdale International Boat Show official website which indicates that OLGA was registered for marketing display under exhibitor listing 2432. Exhibit twenty-two is from the website of Yacht Charter

Fleet, a charter booking company who reports that OLGA had a successful appearance at the 2014 Fort Lauderdale International Boat Show and is available for charters in the Bahamas.

Exhibits sixteen and twenty-three establish that OLGA was marketed for charters in the U.S. Virgin Islands, and did conduct charters beginning and ending the in the U.S. Virgin Islands, in addition the charter for which Plaintiff was employed. Exhibit sixteen is from charter booking company Ocean Getaways and announces that OLGA is marketing a charter special of 30% off for charters in either the U.S. Virgin Islands or the BVI's for bookings between May 15 and September 2, 2011. This can be easily verified by reliable sources and is, therefore, judicial notice is proper. See Fed. R. Evid. 201(b)(2).

Item number twenty-three provides readily recognizable visual evidence of OLGA conducting additional charters in the U.S. Virgin Islands. The Real Housewives of New York, a Bravo televison series filmed two episodes aboard OLGA on a charter that began in St. Thomas and ended in St. John, both in the U.S. Virgin Islands. The locations are readily recognizable by local residents as being in the U.S. Virgin Islands and not subject to reasonable dispute and are a proper subject for judicial notice. Fed. R. Evid. 201(b)(1).

The information for which Plaintiff seeks judicial notice are facts that are crucial to properly analyze the convenience factors a court must consider in

determining a motion to dismiss for forum *non conveniens*.  The court relied on

Defendants' affidavits in support of their motion and by the time the court ordered

dismissal, there were changed circumstances and facts of which the court was not

aware that would have, undoubtably, changed the outcome, if the court had been

aware of the relevant facts as set forth in this motion.

By the time the case was dismissed, the Defendants no longer had control over

the vessel or its location and it was unknown where the vessel was located or

registered.  The court relied on representations that OLGA was located and registered

in the BVI.  The court also relied on representations that crewmembers employed by

Defendants, including Captain Calot, were not subject to subpoena in the United

States.  By the time the court dismissed the case, the crewmembers were no longer

employed by or under Defendants' control, and none of them were subject to BVI

jurisdiction, but two of them, including the captain, were subject to subpoena in the

district court.

The court further relied on representations that OLGA did not operate charters

out of or into the U.S. Virgin Islands.  The facts herein establish that, not only did

OLGA operate charters in the U.S. Virgin islands, but the vessel was aggressively

displayed and marketed for charters and for sale in the U.S. to U.S. residents.

Fairness and justice requires that the court should not have dismissed Plaintiff's case

without and opportunity to consider whether Plaintiff had an alternative forum and

whether the chosen forum, was in fact, inconvenient to Defendants at the time of dismissal. Therefore, justice requires that the facts for which Plaintiff requests judicial notice be considered prior to dismissal.

In the event the court finds these documents are not the proper subject of judicial notice, Plaintiff asks this Court to consider the documents as an offer of proof of some of the evidence that Plaintiff can present by traditional means upon remand if given the opportunity for limited discovery.

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellant respectfully requests that the Court grant this request and take judicial notice of the facts presented in this motion. In the alternative, Plaintiff requests this court to order limited discovery for these issues on remand to the District Court so Plaintiff may present the facts in an alternative evidentiary format.

Respectfully submitted,

Dated: September 22, 2016     **LAW OFFICES OF FRIEDBERG & BUNGE**

By: */s/ THOMAS F. FRIEDBERG, ESQ.*
THOMAS F. FRIEDBERG, ESQ. (V1#1006)
Attorneys for Plaintiff/Appellant,
Michelle Trotter

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and exact copy of the foregoing

**PLAINTIFF-APPELLANT'S NOTICE AND MOTION FOR JUDICIAL**

**NOTICE** was served on September 21, 2016, by causing this document to be served

through the Court's Electronic Case Filing System to the following parties and

counsel:

JENNIFER Q. MILLER, ESQ. (VI#1109)
MICHAEL J. DONO
**HAMILTON, MILLER & BIRTHISEL, LLP**
50 Southeast Second Avenue, Suite 1200
Miami, Florida 33131
TEL : (305) 379-3686
FAX: (305) 379-3690
 "jmiller@hamiltonmillerlaw.com"
"mdono@hamiltonmillerlaw.com"

*/s/ THOMAS F. FRIEDBERG, ESQ.*