**Case No. 16-1967**
_____

**UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

_____

MICHELLE TROTTER,
Plaintiff-Appellant,

v.

7R HOLDINGS, LLC, LUIS A. RUBI GONZALEZ, M/Y OLGA
Defendants-Respondents

_____

Appeal from United States District Court of the Virgin Islands, St. Thomas
Civil Case No. 3:14-cv-0099 CVG RM
(Honorable Curtis V. Gomez)

_____

**PLAINTIFF'S REPLY BRIEF**
_____

Thomas F. Friedberg, Esq. (VI Bar No. 1006)
Sarah L. Bunge, Esq. (VI Bar No. 1014)
**LAW OFFICES OF FRIEDBERG & BUNGE**
610 West Ash Street, Suite 1400
P.O. Box 6814
San Diego, CA 92166-0814
Telephone: (619) 557-0101
Attorneys for Plaintiff and Appellant,
MICHELLE TROTTER

# TABLE OF CONTENTS

**Page**

I.   THE DISMISSAL SHOULD BE REVERSED OR VACATED
     BECAUSE THE DISTRICT COURT FAILED TO PERFORM A
     CHOICE OF LAW ANALYSIS AS REQUIRED TO ANALYZE
     AND BALANCE THE CONVENIENCE, PRIVATE AND
     PUBLIC INTEREST FACTORS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     A.   THE THIRD CIRCUIT SHOULD FOLLOW THE NINTH,
          TENTH AND ELEVENTH CIRCUITS IN HOLDING
          THAT DETERMINING CHOICE OF LAW AT THE
          OUTSET MAY PRECLUDE DISMISSAL WITHOUT
          THE NECESSITY OF FURTHER ANALYSIS. . . . . . . . . . . . . . . 2

     B.   A CHOICE OF LAW DETERMINATION IS NECESSARY
          TO PROPERLY CONSIDER AND BALANCE THE
          *FORUM NON CONVENIENCE FACTORS.* . . . . . . . . . . . . . . . . . . 4

     C.   CHOICE OF LAW ANALYSIS LEADS TO THE
          INESCAPABLE CONCLUSION THAT U.S. MARITIME
          LAW APPLIES AND DISMISSAL WAS ERROR. . . . . . . . . . . . . 6

          1.   The place of the wrongful act was merely fortuitous and
               is entitled to little weight under the facts of this case. . . . . . 10

          2.   The law of the flag factor is entitled to no weight
               under the facts of this case. . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          3.   Proper analysis of Allegiance of the Shipowner and
               Base of Operations indicates both factors points
               to the application of U.S. law. . . . . . . . . . . . . . . . . . . . . . . . . 12

          4.   The contract was entered in the U.S., significant duties
               were performed in the U.S. , therefore, this substantia
               factor weighs strongly in favor of  U.S. law. . . . . . . . . . . . . 18

5. Plaintiff's U.S. citizenship and domicile in the U.S. is extremely important and is entitled to decisive weight under the facts of this case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

6. The law of the forum factor weighs in favor of applying U.S. law.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

7. The BVI forum is not accessible to hear Plaintiff s because it lacks jurisdiction over the Defendants, does not permit litigation of the subject matter of the dispute and the remedy offered is clearly unsatisfactory and in light of the strong U.S. interest, this factor, alone, decisively favors the U.S.. . . . . . . . . . . . . . . . . . . . . 21

II. THE BVI IS NOT AN ADEQUATE ALTERNATIVE FORUM. . 25

III. THE COURT DID NOT ACCORD PROPER DEFERENCE TO PLAINTIFF'S CHOICE OF FORUM. . . . . . . . . . . . . . . . . . . 29

IV. THE COURT'S CONSIDERATION AND BALANCING OF THE PRIVATE AND PUBLIC INTEREST FACTORS WAS NOT REASONABLE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

A. THE COURTS ANALYSIS AND CONCLUSIONS ARE UNREASONABLE BECAUSE THEY ARE BASED ON UNSUPPORTED FINDINGS. . . . . . . . . . . . . . 32

V. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

CERTIFICATE OF WORD COUNT. . . . . . . . . . . . . . . . . . . . . . . . . 35

CERTIFICATE REGARDING ELECTRONIC FILING.. . . . . . . . . . . . 35

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

# TABLE OF AUTHORITIES

**Page**

<u>Federal Court Cases</u>

*American World Airways, Inc. V. Lopez,* 490 U.S. 1032 (1989). . . . . . . . . . . . . . 4

*Analytical Engineering, Inc. V. Baldwin Filters, Inc.* 425 F.3d 443
 (7th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Associates Discount Corp. V. Goldman,* 524 F. 2d 1051 (3d Cir. 1975). . . . . . . 21

 *Bell v. Hood,* 327 U.S. 678 (1946). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Chirinos De Alvez v. Creole Petroleum Corp.*, 613 F.2d 1240 (3d Cir. 1980). . 7, 8

*Cruz v. Maritime Co. Of Philippines,* 702 F.2d 47 (2d Cir. 1983). . . . . . . . . . . . 3

*Fallhowe v. Hilton Worldwide, Inc.,*No.14-cv-02870-PAB-KLM
  (D.CO August 28, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Fantome, S.A., Limitation Proceedings,* 2003 AMC 275, 277,
  2003 WL 230009844 (11th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 15, 16

*Elder v. Holloway,* 510 U.S. 510 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Estate of Sanford v. Comm'r of I.R.S.,* 305 U.S. 39 (1939). . . . . . . . . . . . . . . . 22

*Hellenic Lines, Ltd. v. Rhoditis,* 398 U.S. 306 (1970). . . . . . . . . . . . . . 7, 11, 13, 14

*Hoffman v. Rosewood Hotels and Resorts,* Memorandum Opinion,
No. 2012-86 (D.VI. July 31, 2013). . . . . . . . . . . . . . . . . . . . . . . . . 30, 31, 32 ,33, 34

*In re Air Crash Disaster Near New Orleans, La.,* 821 F.2d 1147
  (5th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Kuntz v. Windjammer "Barefoot Cruises", Ltd.,* 573 F.Supp. 1277
  2  (E.D. Pa. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Lacey v. Cessna Aircraft Co.,("Lacey I")* 886 F.2d 628 (3d Cir. 1989).   30, 31, 36

*Lacey v. Cessna Aircraft Co.,("Lacey II")* 932 F.2d 170 (3d Cir. 1991).. . . . .   1 ,6

*Lauritzen v. Larson,* 345 U.S. 571 (1953). . . . . . . . . . . . . . . . . . . . 7, 8, 9, 10, 12

*Lehman v. Humphrey Cayman, Ltd.,*713 F.2d 339 (8th Cir. 1983) . . . . . . . . . .  29

*Manu Int'l, S.A. v. Avon Products, Inc.,* 641 F.2d 62 (2d Cir. 1981). . . . . . . . 3, 29

*Marriott v. Sedco Forex Int'l Resources, Ltd.,* 827 F.Supp. 59
   (D. Mass. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

*Neely v. Club Med Management Services Inc.,* 63 F.3d 166
   (3d Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9, 12 ,14, 18, 19, 20

*Pain v. United Technologies Corp.,* 637 F.2d 775 (D.C. Cir. 1980). . . . . . . . . .  29

*Piper Aircraft v. Reyno Hartzell Propeller, Inc.,* 454 U.S. 235 (1981). . . . . 4, 5, 28

*Periera v. Utah Transport, Inc.,* 764 F.2d 686 (9th Cir. 1985). . . . . . . . . . . . . . .  3

*Saud v. PIA Investments,* Memorandum and Order,
   No. 1:07-cv-05603-NRB, (S.D.N.Y Dec.14, 2007), ECF No. 25. . . . . . . . . . .  28

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422 (2007).   5, 6, 8

*Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino,* 447 F.3d 1357
   (11th Cir. 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

*Synygy v. ZS Associates, Inc.,* No. 08-2355 (3d Cir. June 1, 2009). . . . . . . . . 25, 26

*Szumlicz v. Norwegian American Line, Inc.,* 698 F.2d 1192 (11th Cir. 1983). . . .  2

*United States v. Campbell,* 351 F.2d 336 (2nd Cir. 1965). . . . . . . . . . . . . . . . . . . 22

*United States National Bank of Oregon v. Independent Insurance
   Agents of America, Inc.,* 508 U.S. 439 (1993*)*. . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Williams v Cruise Ships Catering,* 299 F.Supp.2d 1273 (S.D. Fla. 2003). . . . 15, 17


Treatises


 Gilmore & Black, *The Law of Admiralty* at 477 (2d ed. 1975). . . . . . . . . . . . . . . . . . .

Articles

Bethel Finance, *Yacht Registration in the BVI,*  http://www.bethelfinance.com/
   yacht-charters-bvi  (last visited Nov. 11, 2016). . . . . . . . . . . . . . . . . . . . . . . . . . 11

Mark J. Buhler, *A Brief Introduction to Offshore Registration and
   Financing of Yachts,* Presentation to ABA Section of Business Law,
   Commercial Fin. Comm., Subcomm. on Mar. Fin.(August 2, 2009). . . . . . . . . . . 11

Timothy P. O'Shea, *The Jones Act's Specific Venue Provision:
   Does it Preclude Forum Non Conveiens Dismissal?* 14 Fordham Int'l L.J.
   696 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Grant Gilmore & Charles Black, Jr., *The Law of Admiralty,*§ 6-63
(2d ed. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Edelman*, Forum non Conveniens: Its Application in Admiralty Law,*
15 J. Mar. L.& Com. 517, 529-32 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

I.

THE DISMISSAL SHOULD BE REVERSED OR VACATED BECAUSE
THE DISTRICT COURT FAILED TO PERFORM A CHOICE OF LAW
ANALYSIS AS REQUIRED TO ANALYZE AND BALANCE THE
CONVENIENCE, PRIVATE  AND  PUBLIC INTEREST FACTORS.

In determining whether a case should be dismissed pursuant to a *forum non
conveniens* motion, a determination of whether U.S. law applies is necessary,
either at the outset or in connection with identifying and balancing relevant
interests.  What substantive law applies is a legal question which is reviewed *de
novo*.  *Lacey v. Cessna Aircarft Co.,* 932 F.2d 170, 198 (3d Cir. 1991) (*Lacey II*)
(Nygaard, J., dissenting).

Contrary to Defendants' assertion, the waiver doctrine does not apply to
new or additional authority in support of arguments made below. When reviewing
questions of law, the court should consider all relevant precedents, not merely
those cited by parties, otherwise the appellate court may affirm incorrect legal
results.  *Elder v. Holloway,* 510 U.S. 510, 516, n.3 (1994); *United States National
Bank of Oregon v. Independent Insurance Agents of America, Inc.,* 508 U.S. 439,
448 (1993)( "[A] court may consider an issue antecedent to and ultimately
dispositive of the dispute before it, even if the parties fail to identify and brief the

issue.")

A.  THE THIRD CIRCUIT SHOULD FOLLOW THE NINTH, TENTH AND
ELEVENTH CIRCUITS IN HOLDING THAT DETERMINING CHOICE OF
LAW  AT THE OUTSET MAY PRECLUDE DISMISSAL WITHOUT THE
NECESSITY OF FURTHER ANALYSIS.

There is a split of authority in the circuits whether, when ruling on a *forum
non conveniens* motion, a choice of law analysis is performed at the outset to
determine whether U.S. law applies, thereby creating a strong U.S. interest that
precludes the transfer to a foreign jurisdiction.  *See e.g., Needham v. Phillips
Petroleum Co. Of Norway,* 719 F.2d 1481, 1483 (10th Cir. 1983) (if American law
applies, forum non conveniens doctrine is inapplicable); *Szumlicz v. Norwegian
America Line, Inc.,* 689 F.2d 1192, 1195 (11th Cir. 1983) (if U.S. law applies, the
court should retain jurisdiction rather than relegate it to a foreign tribunal; district
court's refusal to analyze convenience factors affirmed); *Fantome, S.A., Limitation
Proceedings,* 2003 AMC 275, 277, 2003 WL 230009844 (11th Cir. 2003)
(unpublished) (first the court must decide choice of law and if American law
applies, the case should not be dismissed);   fn: Unpublished opinions of the
Eleventh Circuit may be cited as persuasive authority.  11th Cir. R. 36-2.;  *Periera
v. Utah Transport, Inc.,* 764 F.2d 686, 688, 690 n.2 (9th Cir. 1985) *cert. dismissed,*

475 U.S. 1040 (1986) (expressly agreeing with Tenth and Eleventh Circuits that

dismissal without initially performing choice of law analysis is error); *Marriott v.*

*Sedco Forex Int'l Resources, Ltd., 827 F.Supp. 59,*68,71,72 (D. Mass 1993) ( U.S.

law applied to American seaman's claim and foreign law applied to the foreign

seamen plaintiffs, but it was unnecessary to decide whether Jones Act suits can

ever be dismissed for *forum non conveniens* because U.S. forum was the proper

forum for the foreign seamen).  *But see, Cruz v. Maritime Co. Of Philippines,* 702

F.2d 47, 48 (2d Cir. 1983) (dicta stating choice of law analysis unnecessary with

no citation, rationale or discussion of any kind); *In re Air Crash Disaster Near*

*New Orleans, La.,* 821 F.2d 1147, 1163 n. 25 (5th Cir. 1987) (Jones Act case may

be dismissed on *forum non conveniens*) *vacated on other grounds sub nom,*

*American World Airways, Inc. V. Lopez,* 490 U.S. 1032 (1989).

In light of the special status of seamen and strong public policies underlying

maritime law,  the better view is followed by the Ninth, Tenth and Eleventh

circuits and at least one district court in the First Circuits.  Outsourcing our justice

system in maritime cases applying American law to disputes solely between

Americans does a disservice to long-standing U.S. policies and comity.  Just as

American courts are concerned about becoming the courthouse to the world,

(*Piper Aircraft v. Reyno Hartzel Propeller, Inc.,* 454 U.S.235, 252 (1981)) we

should not expect the rest of the world to fulfill the obligations of our judicial

system, which is most suited to apply U.S. law to its citizens.

This Circuit has traditionally recognized that finding U.S. maritime law

applicable is a finding of strong U.S. interest in the action. *Neely v. Club Med*

*Management Services, Inc.*,63 F.2d 166, 182 (3d Cir. 1995)

## B.  A CHOICE OF LAW DETERMINATION IS NECESSARY TO PROPERLY CONSIDER AND BALANCE THE *FORUM NON CONVENIENCE FACTORS*

A choice of law determination is necessary to isolate relevant private and

public interest factors.  Contrary to Defendants' contention (Ans. Br. 11), neither

Piper Aircraft v. Reyno Hartzell Propeller, Inc. 454 U.S. 235, 249 (1981) nor

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 432 (2007)

held that a choice of law determination is unnecessary.  In *Piper*, the Court ruled it

unnecessary to compare the *details of the substance* of each forum's law in order

to determine which nation's law would  better serve the particular interests of the

plaintiff on the merits of the case.  *Piper* at 249-50.  In fact, the Court held that the

district court *properly applied choice-of-law analysis* in connection with public

interest factors and reasonably determined that Pennsylvania law would apply to

one plaintiff and Scottish law to another.  The Court held it was appropriate to

consider jury confusion in applying two sets of laws and the court's lack of

familiarity with Scottish law. *Id.* at 259-260.

In *Sinochem,* the Court held that because *forum non conveniens* is not

merits based, jurisdictional issues need not be decided prior to dismissal.

*Sinochem* at 432. The Court recognized that the private interest analysis also

requires a choice of law determination and stated "[o]f course a court may need to

identify the claims presented and the evidence relevant to adjudicating those issues

to intelligently rule on a *forum non conveniens* motion." *Id.* at 433.

The Supreme Court specifically approved the district court's "well-

considered *forum non conveniens* appraisal." *Id.* at 435. The district court stated

that the

> applicable public interest issue here involves choice of law. A choice of
> law analysis requires, as a threshold issue, that we establish whether this
> matter implicates significant U.S. interests.

.
Memorandum and Order,  No. 03-03771-TON, 19-20, (E.D. Pa. Feb. 27, 2004),

ECF No. 12 (Sinochem D.Ct),  The district court applied this Court's analysis

mandated by *Neely,* at 181-182 and found Chinese law applied because no

American parties or interests were at stake based on the factors. *Sinochem D.Ct.*

*at 20-22, 20 n.10.*

C.   CHOICE OF LAW ANALYSIS LEADS TO THE INESCAPABLE

CONCLUSION THAT U.S. MARITIME LAW APPLIES AND DISMISSAL

WAS ERROR.

Choice of law is a question of law subject to de novo review. *Lacey II* at 198. A court may apply U.S. maritime law if the parties include either an American seaman or an American defendant because the presence of either of these factors establishes that "significant American interests are implicated." *Id. at* 182. American residency of all parties in this case clearly satisfies this threshold requirement of prescriptive jurisdiction. If the district court had applied the factors enunciated in *Lauritzen* and Rhoditis as required, it would have found application of U.S. maritime law to be reasonable and the proper.

Defendants urge this Court to determine the *merits* of Plaintiff's case at this early stage without discovery, and to rule that Plaintiff has failed to establish the elements of the causes of action alleged and, on that basis, dismiss the case by finding that the Jones Act and U.S. general maritime law are inapplicable. (Ans. Br. 18-20). Defendants appear to argue that the determination of prescriptive jurisdiction for a choice of law analysis is, in reality, a trial on the merits. *See id.* Defendants argue that this Court may not exercise jurisdiction because they dispute facts Plaintiff must prove in order to prevail at trial. Defendants have not even submitted competent evidence disputing facts submitted by Plaintiff or allegations in her complaint . In a *forum non conveniens* motion, all factual

6

disputes must be resolved favor of the plaintiff. *Chirinos De Alvez v. Creole Petroleum Corp.*, 613 F.2d 1240, 1243 (3d Cir. 1980).

Moreover, as the Supreme Court recognized, "it is well settled that the failure to state a proper cause of action calls for a judgment on the merits. *Bell v. Hood,* 327 U.S. 678, 682 (1946). If, after a court *has decided to exercise jurisdiction*, it determines that the allegations "do not state a ground for relief, then dismissal of the case would be on the merits." *Id.* A *forum non conveniens* motion is not determined on the merits. *Sinochem S.Ct* .at 423-24. "[I]t is a determination [whether] the merits should be adjudicated elsewhere." *Id. at* 432. Plaintiff has properly alleged her causes of action. JA-29-35. Facts alleged in the complaint are to be accepted as true for purposes of *forum non conveniens* decisions. *E.g.,Fallhowe v. Hilton Worldwide, Inc.,*No.14-cv-02870-PAB-KLM (D.Colo. August 28, 2015).

Once U.S. interest is implicated by the presence of one or more American parties, U.S. maritime law applies unless application of the *Laurtizen* factors indicate that a foreign nation has a strong interest and conflicting laws which "compel the conclusion that application of American law is unreasonable. *Neely* at 188. In applying the *Lauritzen* factors , the competition is between conflicting laws, which can be "intelligently and rationally" resolved "only by ascertaining

and evaluating the policies underlying the competing laws." Therefore, "[f]oreign

contacts standing alone,...are of extremely limited value." *Neely* at 188 (citations

omitted). Evaluation of the *Lauritzen* contact factors in conjunction with policies

reflecting America's interests conclusively establishes the necessity of applying

U.S. law to the case at bar.

As this Court has recognized the strong U.S. interest, "when seamen are

injured in the course of their employment, torts are not 'ordinary,' for seamant

have long been considered wards of admiralty entitled to special protection

different from that afforded by conventional tort law....the traditional policy has

been to avoid...the application of rules of common law." *Neely* at n.17

Defendants have failed to meet their burden of establishing any significant

BVI interests or conflicting laws that would be offended by applying U.S. law.

Therefore, unless virtually all the *Lauritzen* factors point away from the U.S.,

American law should be applied in light of the strong interests implicated. *See id.*

at 190.

**1. The place of the wrongful act was merely fortuitous and is entitled**

**to little weight under the facts of this case.** During the nine days Plaintiff was

aboard Olga, the vessel was in U.S. waters for six days, the majority of the trip.

Therefore, the BVI location creates only a minor contact of negligible significance

because Plaintiff's injury could just as easily have occurred while the vessel was

in the U.S. *See Neely* at 191. The BVI has no interest in regulating recovery of

U.S. seamen against U.S. based Defendants and application of U.S. law does not

threaten any regulatory interests the BVI might have. This factor points to the

reasonableness of applying U.S. law.

**2. The law of the flag factor is entitled to no weight under the facts of**

**this case.** Olga was sold during the pendency of Defendants' motion and her

current location, registration and what flag she might fly is unknown. *See*

Plaintiff-Appellant Motion for Judicial Notice 3 ¶8, ECF No. 003112416181).

(Olga sold in Florida almost a year before the dismissal). Therefore, this factor

does not point toward the BVI and should be discounted. *See id.* at 193-94 (no

significance should be accorded this factor because it is unknown what flag the

vessel flew even though there was evidence of country of registration). The fact

that Olga may, at one time, have been registered in the BVI is insignificant at this

time, if it was ever significance in light of the Supreme Court's recognition of

the"registration of convenience" practice. *Rhoditis at 315(1970)* (Harlan, J.

Dissenting) (the majority recognize "the phenomenon of 'convenient' foreign

registry as a wedge for displacing the law of the flag"). The registration of

convenience has grown in popularity to avoid taxes and lower operating costs as

owners seek the registration with the best legal arrangements.  Timothy P. O'Shea,

*The Jones Act's Specific Venue Provision: Does it Preclude Forum Non*

*Conveiens Dismissal?* 14 Fordham Int'l L.J. 696, 703 n.4 (1990).  The BVI is a

popular registration of convenience.  *See* Mark J. Buhler, *A Brief Introduction to*

*Offshore Registration and Financing of Yachts,* Presentation to ABA Section of

Business Law, Commercial Fin. Comm., Subcomm. on Mar. Fin.(August 2,

2009)(available at apps.americanbar.org/dch/ thedl.cfm?...Offshore_Registration

_and_Financing...pdf);  Bethel Finance, *Yacht Registration in the BVI,*

http://www.bethelfinance.com/yacht-charters-bvi (last visited Nov. 11, 2016)

(exhaustive list of advantages, tax advantages and reasons to register Yachts in

BVI).  Flags of convenience will not prevent courts from looking at the reality of

the circumstances to apply U.S. law.  *See* Gilmore & Black, *The Law of Admiralty*

at 477 (2d ed. 1975).   BVI has no interest in an unregistered yacht that could be

threatened by application of U.S. law, so this factor favors U.S. law.


**3.  Proper analysis of Allegiance of the Shipowner and Base of Operations**

**indicates both factors point to application of U.S. law.**  American owners

cannot disguise themselves as foreign owners in order to avoid application of U.S.

law.  It is necessary to look beyond the facade of corporate formalities and

examine the owner's contacts with the U.S. *Lauritzen* at 587; *Neely* at 194. (Court

must look beyond the formal legal status of vessel owner).  To determine U.S.

contacts, the Court must look to "the base of daily operations of the vessel,... and

the corporate bases of Defendants."  *Neely* at 194.

 According to affidavits submitted by Defendants, 7R Charters, Ltd, was a

BVI company and owned Olga at the *time of the accident*. JA-56¶1.  7R Charters

is wholly owned by Defendant 7R Holdings, whose principal place of business is

in Puerto Rico. JA-54¶2,6.  Defendant Rubi-Gonzales resides in Puerto Rico and

is Director of both 7R Charters and 7R Holdings.  JA-54¶1,6.  Defendant Rubi-

Gonzales personally accepted service on behalf of Olga at the office of 7R

Holdings in Puerto Rico. *See* JA-27#7-9.   In this case, it is clear that 7R Charters

is merely a foreign shell created by an American owner to avoid the requirements

of U.S. law.  Incorporation in the BVI carries little weight.  Moreover, since the

vessel was sold, .7R Charterers is likely no longer active, if it is even still in

existence.  This factor weighs in favor of U.S. law.

The Supreme Court in *Rhoditis* instructed that "If...the liberal purposes of

the Jones Act are to be effectuated, the facade of the operation must be considered

minor, compared with the real nature of the operation and a cold objective look at

the actual operational contacts that this ship and this owner have with the United

11

States." *Rhoditis* at 310 The Court found that because the 95% stockholder was a U.S. resident, the Greek corporation was merely a facade deemed to have a U.S. base of operations and held U.S. law applied. *Id*.

The Court further held that, because the vessel earned income from cargo originating or terminating in America, the vessel's base of operation was also deemed to be American. *Id.*  Although the  plaintiff was a Greek citizen who was hired in Greece, for a Greek-flagged ship, with a contract that provided for Greek law to apply to any claims and he could obtain compensation from  Greek courts, the Court stated "[w]e see no reason whatsoever to give the Jones Act a strained construction so that this alien owner, engaged in an extensive business operation in this country, may have an advantage over citizens engaged in the same business by allowing him to escape the obligations and responsibility of a Jones Act 'employer'." *Id.*

 The Court held that the base of operations is more substantial  and  the other factors are less important when considered in the light of the strong national interest served by application of U.S. law.  *Id.*  In *Rhoditis,* the Court also noted that the *Lauritzen* opinion considered the fact that the plaintiff was hired in the U.S., and was also returned to the U.S. by the vessel constituted additional contacts with the U.S.  *Id.*

12

Contrary to Defendants' contention (Ans. Br. 20), in this Circuit, Defendants have the burden to prove the existence of foreign contacts. *Neely* at 188 (the allocation of burdens comports with the remedial policies underlying the Jones act and unseaworthiness that are designed for the protection of seamen). The Defendants provided no evidence regarding base of operations for either 7R Charters or Olga.  There is no evidence that 7R Charters actually conducts any business in the BVI, has staff or even has an office, aside from the Puerto Rico office of its owners, Defendants 7R Holdings and Rubi-Gonzales.  Likewise, Defendants have presented no evidence of any BVI base of operations for Olga or any base outside the U.S.  They simply make the false allegation that Olga does not operate charters in or out of St. Thomas.  At least one court, in connection with a base of operations analysis, found that a foreign corporation owner was committing fraud by attempting to establish Netherlands Antilles as their principal and sole place of business when they were actually conducting operations in the U.S. . *Williams v Cruise Ships Catering,* 299 F.Supp.2d 1273, at n.14 (S.D. Fla. 2003)(citation omitted) .

The Eleventh Circuit has held if the vessel has "no permanent base of daily operations," the court should give more weight to the foreign owner's U.S. contacts.  *Fantome,S.A. Limitation Proceedings,* 2003 AMC 275, 281 (11TH Cir.

2003) (unpublished) (day to day repairs took place at various locations where the ship docked)  In *Fantome,* the principal shareholder of the foreign corporate owner of the foreign flagged vessel was a U.S. resident. *Id.* at 276.  The court found that the "decision making power", aside from those of the Captain, and the responsibility  for operations lay at the shareholder's base in the U.S.  *Id. at* 279, 281

The petitioner produced no evidence that advertising, reservations, sales, supply purchases, disbursements, decisions regarding vessel itineraries or coordination of repairs, inspections or supervision were carried out in any foreign country (*id.* at 280) and, therefore, the court found a U.S. base of operations despite the fact the vessel had never been there and held it was "clearly erroneous" to find otherwise.  *Id.* at 279.  The court held that the allegiance of the shipowner as established by the residence of the primary shareholder and its base of operations were sufficient contacts to determine that U.S. applies.  *Id*. at 281.

The *Kuntz v. Windjammer "Barefoot Cruises", Ltd.,* 573 F.Supp. 1277 (E.D. Pa. 1983), the court held that, "consistent with the law in the Third Circuit," U.S. law applies, despite the fact that the accident occurred outside the U.S. and the defendants were both BVI corporations.  The court reasoned that, because the decedent passenger was a U.S. citizen, the contract for the voyage was entered in

14

the U.S. and the foreign defendants advertized and did business in the U.S., those
factors created a decisive federal interest in protecting maritime commerce. *Id.* at
1280-81.

The evidence is that Olga was advertising charters out of the U.S.VI. And
was conducting charters out of St. Thomas, including the charter on which
Plaintiff was injured. JA-143¶22; 148-60. Given the opportunity for discovery,
Plaintiff will establish extensive U.S. charter activity. JA-148-60; : *See also*
Plaintiff-Apellant's Motion Requesting Judicial Notice in Support of Appeal
No.16-1967, (Sept. 22, 2016) ECF No.003112416181.   The vessel regularly does
all its provisioning in Puerto Rico and St. Thomas (JA- 140-42 ¶2, 3,7,11,
13,15,17 ) and does not ever provision in the BVI. JA-224¶6. We also know, that
prior to Plaintiff commencing the voyage in St. Thomas, Olga was in Puerto Rico
for 23 days, from November 27 to December 19. JA-140-41¶2, 10.   Olga recruits
crewmembers through a U.S. company. JA-140¶2. Olga carries jet skis which are
forbidden in BVI waters. JA-¶20. On this charter, although Olga spent a few days
in the BVI, the majority of the voyage was in U.S. waters. Defendants advertize to
Americans in the U.S. through U.S. companies. JA-148-160. The guests on the
charter on which Plaintiff was injured was sold by a U.S. charter management
company. JA-141-42¶10.

Courts considering the base of operations factor have found the presence of sales and marketing activity in the United States and stock ownership by American corporations or residents as persuasive contacts. *Williams v Cruise Ships Catering,* 299 F.Supp.2d 1273,1280 (S.D. Fla. 2003). (99% shareholder of the foreign defendant was a U.S. corporation). The court found that America has a strong interest because the foreign corporation was competing with American companies for passengers. *Id.* at 1281. The evidence in the our record clearly establishes Defendants' U.S. base of operations and competition with U.S. charter companies, outweighing any BVI interest.

In *Neely*, this Court determined that crucial American interests were implicated by advertising to Americans and use of an American corporation to solicit business in the U.S. These contacts were "substantial" and sufficient to outweigh St. Lucia's interest arising from the facts that the vessel operated only within St. Lucia and only for the benefit of a St. Lucia corporation. *Neely* at 194-95.

This Court found that, as here, plaintiff's injuries were directly related to the defendants' American tourism operations because the injuries were suffered in connection with serving the commercial guests and because the guests were as vulnerable as the plaintiff to risk of injury from the dangerous condition.

16

Likewise, American charter guests were as likely as Plaintiff to have been injured using the dock to go ashore   America has "a great interest in assuring adequate protection for the life and health of Americans who are solicited in the United States to vacation or work ...at foreign spots." *Neely* at 195.

Substantial U.S. contacts are present and Defendants' true allegiance and base of operations are in the U.S.  The U.S. has paramount interests in this matter. Defendants are attempting to compete with U.S. charter businesses while attempting to avoid obligations under U.S. law to an injured U.S. seaman by hiding behind a flimsy facade.

**4.  The contract was entered in the U.S. , significant duties were performed in the U.S.  This substantial factor weighs strongly in favor of  U.S. law.**  Capt. Calot first recruited Plaintiff by e-mail after seeking a referral from Churchill Yachts in Ft. Lauderdale, Florida.  JA-140 ll 6-18.  From Puerto Rico, he then called her in Florida *(Id.* ll19, 23-24) and negotiated the terms of the contract. *Id.* ll20-25.  Pursuant to Calot's request, Plaintiff performed duties for 20 days in Florida, from November 30 through December 19.  *Id.* 140 ll26-142 ll13.  From the 20th to the 24th of December Plaintiff performed duties aboard the vessel in St. Thomas and her per diem payment started during this time.  *Id.* 142 Ll17-23.

Place of contracting is not fortuitous and is a substantial factor in

employment aboard a luxury mega-yacht, where chefs are not taken on in random

ports. *See Neely* at 192. Plaintiff's employment was arranged weeks in advance

through a Florida agent, offer and acceptance occurred in the U.S. and much of the

work was performed in the U.S. The U.S. has a strong interest in regulating U.S.

contracts between its residents. BVI has no interest in foreign contracts. This

factor weighs heavily in favor of U.S. law.


**5. Plaintiff's U.S. citizenship and domicile in the U.S. is extremely important and is entitled to decisive weight under the facts of this case.** The Jones

Act was enacted as a result of public perception of America's duty to the

American seamen, who are, as opposed to foreign seamen, the object of

heightened Congressional concern. *Neely* at 195 (citing *Lauritzen*, Jones Act,

numerous court opinions). Every nation has a strong interest that its residents "not

be maimed or disabled from self-support" and this factor almost, by itself,

supports the reasonableness of applying U.S. law. *Id.* at 196 (quoting *Lauritzen* at

586). This factor eliminates any doubt that U.S. connections and strong policies

mandate the application of U.S. law in this case.


**6. The law of the forum weighs in favor of applying U.S. law.** The current

18

forum unquestionably has jurisdiction over the parties and a body of maritime law that serves U.S. interests and provides appropriate remedies and procedures. Plaintiff discusses factor in her Opening Brief (28-29) and below.  The proposed forum has no jurisdiction over the parties and Plaintiff would be unable to carry her burden to prove the BVI is the most appropriate forum as required in that forum.

With respect to this factor, Defendants make only an improper merits argument, contending that Plaintiff was not acting within the scope and course of employment when she was injured.  The Court must ignore this argument.

**7.  The BVI forum is not accessible  because it lacks jurisdiction over the Defendants, does not permit litigation of the subject matter of the dispute and the remedy offered is clearly unsatisfactory and,  this factor, alone, decisively favors the U.S.**   Plaintiff has comprehensively addressed the facts and law relevant to this factor in her Opening Brief (App. Br 23, 25-29).

Defendants are not amenable to jurisdiction in the BVI because there is no legally recognizable agreement to submit to jurisdiction. Even if jurisdiction over Defendants could be obtained, the BVI courts would likely refuse exercise it due to the lack of BVI interest in the dispute.

The is no enforceable agreement or order requiring Defendants to travel to the BVI to accept service. Defendants attempted to argue that the illusory "stipulation" is enforceable. They have provided no authority that a statement by defense counsel in a brief is a contract binding the client. Moreover, Defendant Rubi-Gonzales provided an Affidavit on behalf of all Defendants (JA-54¶3) and nowhere does it state any agreement to submit to BVI jurisdiction. *See* JA-54-55. Absent the client's express consent, an attorney has no power to impair the client's substantive rights. *Associates Discount Corp. V. Goldman,* 524 F. 2d 1051, 1053 (3d Cir. 1975)

A stipulation between parties in the litigation context is a contract, which, *when approved by the court* is binding and enforceable on contract principles. *Analytical Engineering, Inc. V. Baldwin Filters, Inc.* 425 F.3d 443, 452-53 (7th Cir. 2005); *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino,* 447 F.3d 1357, 1365 (11th Cir. 2006). In order to form the basis of a judicial decision, the terms of a stipulation must be definite and certain because it can only be enforced in accordance with its terms. *Estate of Sanford v. Comm'r of I.R.S.,* 305 U.S. 39, 50 (1939); *United States v. Campbell,* 351 F.2d 336, 341 (2nd Cir. 1965). The purported stipulation has no terms. Defendants did not sign anything and have not signified their consent in general or to any specific terms. The court entered no

order (*see* JA-27-28) and the dismissal was not conditional.  *See* JA-3-4.

Even if Defendants traveled to the BVI with an arrangement to receive

service there, the BVI court is not bound to allow such service.  Defendant's

expert, Andrew Thorp ("Thorp"), submitted an affidavit in which he opines that,

based on the circumstances *as he understands them*, the BVI would probably

accept jurisdiction.  However, the affidavit reveals several misunderstandings.

Thorp erroneously states that Plaintiff's complaint alleges that the "incident

involved persons living and working" in the BVI (JA-61¶13) which is not true.

*See* JA-29-35.  Thorp erroneously  asserts that the causes of action are simple tort

claims, (JA-62¶17) rather than statutory and maritime claims, not recognized

under common law.  Thorp erroneously states the complaint alleges that the

"incident involved people living and working [in the BVI]."  JA-61¶13. Thorp

states his misunderstanding that "many of the witnesses" are BVI residents. JA-

63¶20. There were no witnesses to the accident (JA- 143¶23) and there are no

necessary witnesses in the BVI.  His misunderstandings are fundamental to his

opinions. Therefore, his expert opinions lack foundation and should not be

considered.

Thorp concedes that Plaintiff would have to obtain leave of court to serve

Defendants outside the BVI  (JA-63¶17, 71(EC CPR 7.3(1))) and that the court

would have to determine if it is the most appropriate forum.  JA-62¶18. Thorp

states that the court will apply the principles set forth in the leading case of

*Spiliada Maritime Corp.,* 1987 AC 46.  (*Id.)* which, he states will require the court

to determine the "natural forum...that with which the action has the most real and

substantial connection" and will consider the availability of witnesses, the law

governing the transaction and where the parties reside and carry on business.  JA-

62-63¶18-19; *see also,* JA-109 (the court will examine connections to the BVI, to

determine which forum has the "most real and substantial connection" to the

parties and the action).

The *Spiliada* opinion indicates that a plaintiff may only be granted leave to

serve defendants outside the jurisdiction if she can satisfy the court that the BVI is

the most appropriate forum.  JA-74.  The court will conduct an analysis similar the

analysis that U.S. federal courts employ to determine choice of law and *forum non*

*conveniens*.  *See Spiliada,* JA-74-91.  Although the court considers the

convenience factors mentioned by Thorp, the issue is not one of "mere practical

convenience," but also a consideration of the appropriateness "to find the forum

which is the most suitable for the ends of justice." JA-81.  If the connection of the

defendant to the BVI forum is "a fragile one "for example if he is served with

proceedings during a short visit to this country," there is likely another more

appropriate forum for the trial overseas.  JA-83.

In order to obtain leave to serve the defendants, plaintiff must convince the court "that the case is a proper one." Plaintiff has the burden "of showing good reasons why service of a writ...should... be permitted upon a foreign defendant." The proof is based in part on "the nature of the dispute, the legal and practical issues involved, questions of local knowledge, availability of witnesses and their evidence and expense." JA-84.  "The burden of showing good reasons...is a particularly heavy one." JA-85.  "It becomes a very serious question ...whether this court ought to put a foreigner, who owes no allegiance here, to the inconvenience and annoyance...[of litigating] his rights in this country, and I for one say, most distinctly, that I think this court ought to be exceedingly careful before it allows" leave of court to serve foreign defendants."  That statement was subsequently approved on many occasions." JA-85-86.

In the BVI, "it has long been settled law that ...[the plaintiff] must act in the utmost good faith and disclose to the court all matters relevant to the exercise of the court's discretion." JA-112.  The plaintiff has a duty to anticipate all arguments that "might reasonably be advanced against the grant of the...order" and provide them to the court.  JA-113.

If Plaintiff candidly informs the BVI court of the all of the circumstances

and reasons why the BVI is not the "natural forum," she will certainly not be able to convince the BVI court to exercise discretionary jurisdiction.

Plaintiff will then be left with no forum. Moreover, a BVI judgment could not be enforced in the U.S. (*See* JA-107) and there is no indication Defendants have any assets in the BVI. The inaccessibility of the BVI forum conclusively requires application of US. Law.

## II.

## THE BVI IS NOT AN ADEQUATE ALTERNATIVE FORUM

In *Synygy v. ZS Associates, Inc.,* No. 08-2355 (3d Cir. June 1, 2009)(Not Precedential), this Court held that a court may not dismiss for *forum non conveiniens* unless it supplies "specific reasons and develops adequate facts to support its decision." *Id.* at 5(citations omitted). The finding of an adequate alternative forum requires the court to determine 1) whether the BVI recognizes the causes of action in this suit; 2) what forms of relief are available to Plaintiff in BVI; 3) whether such relief could be enforced in the U.S.; 4) whether Defendants are subject to jurisdiction; 5) if not, whether consent to jurisdiction is legally sufficient; and 6)whether any dismissal should be conditioned on such consent. *See id.* at 5.

The district court did not adequately address any of these factors. The court found that BVI "would recognize Trotter's negligence claim." JA-12. The court did not address whether the BVI negligence common law would recognize Plaintiff's claims against the *named* Defendants, who did not control the premises. The court did not address Plaintiff's claims for Maintenance and Cure and unseaworthiness or mention what forms of relief are available. It did not address judgment enforceability in the U.S. but merely stated that the BVI allows enforcement " by writ of execution or by attachment." JA-11.

The court acknowledged BVI jurisdiction extends to those residing or doing business in the BVI and that the BVI court will look what is the "'natural forum'... which has the most real and substantial connection." *Id.* The court made a vague reference to "service out" for "tort claims" where "the damage was sustained in the jurisdiction." *Id.* There was no factual discussion or findings of how that relates to Plainitff's claims or specifically maintenance and cure. The court failed to even mention whether Defendants' purported consent to jurisdiction is legally sufficient, which it clearly is not, under either U.S. or BVI law or whether dismissal should be conditional.

There was never any enforceable agreement to be served within the jurisdiction. No stipulation was ever prepared, signed or filed and no order was

ever entered.  Even if Plaintiff were able to accomplish stipulated service, the BVI

will likely refuse to hear the case based on its own *forum non conveniens* analysis.

Plaintiff will be unable to obtain leave of court to serve the Defendants

outside of the jurisdiction because the BVI court will conduct an analysis to weigh

BVI interests against U.S. interests based on the same choice of law and

convenience factors and will reach the inescapable conclusion that BVI has no

interest in this litigation and the U.S. is the most appropriate forum.  BVI  is not

the natural forum to litigate a dispute  between foreigners with no connections

and no  business dealings or assets there.  That conclusion is bolstered by the

appropriateness of a U.S. forum based the facts that the U.S. has jurisdiction, .

Defendants cite (Ans. Br. 23) *Saud v. PIA Investments,* Memorandum and

Order, No. 1:07-cv-05603-NRB, (S.D.N.Y Dec.14, 2007),ECF No. 25.  The facts

in that case are the reverse of the facts in our case and court's analysis in *Saud*

supports retaining U.S. jurisdiction in our case.

 The BVI was found to be an appropriate forum because the parties were

already litigating a lawsuit regarding the same subject matter so their own course

of conduct established to adequacy of the BVI forum.  *Id.* at 9. Dismissal was

appropriate because U.S. interests were not implicated and the BVI has a "strong

interest" in interpreting and applying its own law.  *Id.* at 12. The dispute involved

the application of BVI statutory law and interpretation of  BVI corporate articles

of incorporation. *Id.* at 2-4,8,12. The foreign parties had no connections to the

U.S. except the BVI defendant owned a New York hotel (*Id.*.at 2,10) and

"virtually everyone and everything is located abroad." *Id.* at 12.

The court may not dismiss without certainty that Plaintiff can reinstate her

suit in the alternate forum "without undue inconvenience or prejudice." *See Piper*

at 255. Plaintiff cannot reinstate her suit there without  meeting the impossible

burden of proving the BVI is the forum with the most real and substantial

connection to the parties and litigation.


III.

THE COURT DID NOT ACCORD PROPER DEFERENCE TO PLAINTIFF'S

CHOICE OF FORUM

The district court simply restated the rule and made no findings. That

constitutes reversible error. *Lony I* at 634.   "[C]ourts should require positive

evidence of unusually extreme circumstances, and should be thoroughly convinced

that material injustice is manifest before exercising any such discretion to deny a

citizen access to the courts of this country." *Lehman v. Humphrey Cayman,*

*Ltd.,*713 F.2d 339, 342 (8th Cir. 1983) (citations omitted).

The Eighth Circuit cautioned that "emphasis on the district court's discretion...must not overshadow the central principle of *Gilbert*... that plaintiff's choice of forum should rarely be disturbed." *Id.* (quoting *Manu Int'l, S.A. v. Avon Products, Inc.,* 641 F.2d 62,65 (2d Cir. 1981). "Trial judges do not have unchecked discretion to dismiss cases from a plaintiff's chosen forum simply because another forum, in the court's view, may be superior to that chosen by plaintiff." *Id.* (quoting *Pain v. United Technologies Corp.*, 637 F.2d 775, 783 (D.C. Cir. 1980).

The district court focused its analysis with a pre-determined outcome. More than half of the district court's opinion, including its statement of the deference granted to Plaintiff, is copied *word for word*, from it's opinion in *Hoffman v. Rosewood Hotels and Resorts,* Memorandum Opinion, No. 2012-86 (D.VI. July 31, 2013). *Compare* JA-9-15, 17-22, 24-25, *with Hoffman* at 3-9. The court's entire analysis of the deference due to Plaintiff's choice of forum is word for word from the *Hoffman* opinion. *See* JA-14-15.


IV.

THE COURT'S CONSIDERATION AND BALANCING OF THE PRIVATE AND PUBLIC INTEREST FACTORS WAS NOT REASONABLE

Defendants, now, for the first time, raise an argument that Scrub Island Resort, Spa & Marina may be a potential third party defendant, despite Defendants' arguments that new factual allegations are waived.  Nevertheless, there is no evidence that the resort is not amenable to process in the U.S.

Courts are required to determine each case on its own facts.  *Piper* at 249 "The courts conclusions on each of these elements must be sufficiently detailed ans supported by the record." (*Lacey I* at 39) and court must "supply specific reasons and develop adequate facts to support its decision." *Id. at 43.*

The district court adopted its reasons and conclusion directly from *Hoffman*, a prior case, with completely different facts.  The only difference in the court's analysis is that in *Hoffman*, the court did conduct a choice of law analysis and correctly determined that BVI law was applicable .  *See Hoffman* at 8-9.  In *Hoffman*, an American tourist staying at a hotel in the BVI was injured  aboard a boat chartered at the hotel for an excursion exclusively within the BVI.  The vessel was owned and operated by, defendant B&B, a BVI company operating in the BVI, and captained by a BVI resident.  *Hoffman* at 1,7.

The undisputed evidence before the court established that the Managing Director of the hotel, a BVI resident, had actual knowledge of the accident and

29

identified, by name and position, four additional hotel employees, all of whom had relevant knowledge of the incident and were residents of the BVI. Additional witnesses included a former hotel employee, the principle of the vessel owner the captain operating the vessel at the time of the injury. There was no evidence connecting the transaction, in any way, with the Virgin Islands. *Id.* at 8. *Hoffman* did not involve maritime claims, it was a garden variety common law negligence claim based on diversity jurisdiction. *Id.* at 8.

*Hoffman* involved completely different facts, different interests and fundamentally different claims that did not implicate U.S. interests. It was clearly unreasonable for the court to adopt the same analysis, reasoning and conclusion, word for word, in our very different case.

## A. THE COURTS ANALYSIS AND CONCLUSIONS ARE UNREASONABLE BECAUSE THEY ARE BASED ON UNSUPPORTED FINDINGS

The court made the following findings that have no support in the evidence:

- Olga is "operated by 7R Charters Limited" JA-5.

- "Defendants list some potential witnesses who are residents of the BVI" JA-19. No witnesses are alleged to be residents of the BVI.

- "Calot lists several groups of employees which may have knowledge

of the incident." JA-19-20.  In *Hoffman*, the affidavits did list groups of employees with relevant knowledge.

- "employees from the Scrub Island Resort...may have knowledge of the alleged injuries. "JA-20.  There is no indication of any such witnesses with qualifications to testify regarding injuries.  Calot's speculative belief the their could be unidentified resort employees with knowledge of the incident (JA-57) lacks foundation and, therefore, cannot reasonably support a finding.  Plaintiff provided evidence that there were no witnesses.  JA-143¶23.

- "among all the potential fact witnesses...many of them reside in the BVI."  JA-20.  There is no evidence that any witness resides in the BVI.

- "Trotter alleges the accident did not occur on any premises, but rather at sea."  JA-21.  Plaintiff never made any such allegation.  That was the exact finding in *Hoffman* at 7.

- "the vessel in question is...operated by a BVI corporation."  JA-21.  There is no such evidence.

- "Trotter is suing the wrong defendant."  JA-21.

- "proceeding in the BVI would hep to reduce the costs for the

production of witnesses."  JA-21.

- "if these proceedings were carried out in St..Thomas, there would be difficulty scheduling matters that requireed the parties' presence." JA-21.

- "The parties would need to come to St. Thomas for hearings.  If the Court needed to quickly change a date or time, this would further inconvenience the parties and witnesses traveling to St. Thomas." JA-21-22.  The evidence establishes that the BVI courts set very tight deadlines with strict penalties for non-compliance.  JA-64¶23.

- "The Court is also without information regarding the congestion of the BVI's court."  JA-22.  Evidence was presented that the BVI courts have such a heavy civil list and many cases involving commercial urgency causing the courts to struggle to avoid an appearance of "summary justice."  JA-101

- "public interest factors concern 'the interest in having the trial of a diversity case...'" JA-22.  This is not a diversity case, which involves very different public interests.  The *Hoffman* case was a diversity case.  *Id.* at 8.

- "The only connection that the community of St. Thomas might have

to this controversy would flow from Trotter boarding the Olga in

St.Thomas."  JA-24.

- • The court failed to consider all the connections with the home forum, the U.S.

- • The court ignored the facts that Olga operated charters out of St. Thomas (JA-157, 143¶22), used St. Thomas as a supply hub (JA-140 l.2; 141 ll.2-3; 141 ll.9-10; 142 l.11; 142 ll.18-20), anchored in U.S.V.I. waters for the enjoyment of charter guests (JA-142 l.26), used the waters off St. John for jet-sking (JA-142 l.27), vessel used marinas in St. Thomas for its charter guests (JA-142 l.28; 143 l.3) and crew (JA-143 ll.2-3)

- • ""It seems uniquely burdensome to require a jury in the United States Virgin Islands to consider foreign evidence and possibly apply foreign law."  JA-24.

- • "proof [of all of the relevant conduct] will require obtaining evidence and witnesses from the BVI."  JA-24. There is no evidence of any witnesses in the BVI.  The only evidence located there is an ER report from Pebbles Hospital. It is not burdensome to obtain a copy of this

record, in fact, although not in the record, counsel has obtained a

copy, which is currently located at its office in the Virgin Islands.

- "this Court expects that the BVI judiciary would have a keen interest

  in resolving such a dispute." JA-24-25.

- "the Court cannot ignore the interests of the defendants in avoiding

  litigation that would be oppressive in this inconvenient forum." JA-

  25.

When the evidence is actually analyzed, the only convenience in the BVI is

the E.R report from Pebbles hospital, which is easily obtainablein this forum.  The

court did not supply specific reasons or develop facts to support its conclusions as

required and ignored most of the facts provided by Plaintiff.  *See* JA-140-43.

There was no reasonable basis to dismiss this case for *forum non conveniens.*


V.

CONCLUSION

The only inconvenience to Defendants in the Virgin Islands is the fact that

they will be required to appear to defend a meritorious lawsuit.  It is certainly not

oppressive and vexatious out of all proportion to Plaintiff's convenience.   Based

on the foregoing, Plaintiff respectfully requests this Court to reverse the order of

dismissal and remand for discovery and trial.

Dated: November 14, 2016          **LAW OFFICES OF FRIEDBERG & BUNGE**




By:  *s/ THOMAS F. FRIEDBERG, ESQ.*
Attorneys for Plaintiff/Appellant,
    MICHELLE TROTTER

## <u>CERTIFICATE OF WORD COUNT</u>

Pursuant to L.A.R. 32(a) and 1112.9, I hereby certify that this brief complies with the type-volume limitation of Fed.R.App.P. 32(a) because the brief contains 7737 words, excluding the parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because this brief has been prepared using a proportionally spaced typeface using a Corel WordPerfect word-processing program to generate the brief.  The entire brief is double spaced. The font is 14 point Times New Roman.

## <u>CERTIFICATE REGARDING ELECTRONIC FILING</u>

Pursuant to L.A.R. 31.1( c), I hereby certify that an electronic version of this brief, in PDF format, was filed; that the text of the electronic version identical to the text in the paper copies and that a McAfee Anti-Virus Protection program was run on the PDF version and no virus was detected.

Dated: November 14, 2016     **LAW OFFICES OF FRIEDBERG & BUNGE**

By: _s/ THOMAS F. FRIEDBERG, ESQ._
Attorneys for Plaintiff/Appellant,
    MICHELLE TROTTER

36

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and exact copy of the foregoing

**PLAINTIFF-APPELLANT'S REPLY BRIEF** was served on November 14, 2016,

by causing this document to be served through the Court's Electronic Case Filing

System to the following parties and counsel:

JENNIFER Q. MILLER, ESQ. (VI#1109)
KELLY CHARLES-COLLINS, ESQ.
MICHAEL J. DONO, ESQ.
**HAMILTON, MILLER & BIRTHISEL, LLP**
50 Southeast Second Avenue, Suite 1200
Miami, Florida 33131
TEL : (305) 379-3686
FAX: (305) 379-3690
"jmiller@hamiltonmillerlaw.com"
"kcharlescollins@hamiltonmillerlaw.com"
"mdono@hamiltonnillerlaw.com"


s/THOMAS F. FRIEDBERG, ESQ.
Attorneys for Plaintiff/Appellant,
MICHELLE TROTTER

.